### HOWARD v. KITCHENS.

1. Where a married woman borrows money for her own use and not for another, it is not a purchase of property, but it is a contract as to her separate property and enforceable against her estate, because within her statutory power to make. MR. CHIEF JUSTICE SIMPSON, *dissenting.*

2. So much of a note by a married woman as is based upon her promise to pay for necessary expenses of her daughter, for which by law only her husband is liable, is not a contract as to the separate property of the wife, and therefore not binding upon her. MR. JUSTICE McGOWAN, *dissenting.*

3. *Per* SIMPSON, C. J. A contract made by a married woman as to her separate property may be binding upon her, although it does not prove to be for the benefit of her separate estate.

Before FRASER, J., Chester, March, 1889.

Action by Robert C. Howard against Nancy Kitchens, on a

note dated January 22, 1885. The judge charged the jury as follows:

I undertake to lay down the law upon the subject of liability with considerable hesitation. I cannot charge the proposition of law which I have been requested by the defendant to charge. I do not know any authority for coupling the word "benefit." The question would then be as to whether this note was as to her separate property. Section 2037 reads: * * * Money is personal property and carries along with it the right to make a binding obligation. I am inclined to hold, and so instruct you, that if Mrs. Kitchens borrowed the money and gave her note for it, it is sufficiently a contract as to her separate property—estate—to make her liable. It is a contract to pay a debt for property which becomes hers when she borrows the money. If, therefore, she borrowed this money, I think she would be liable. That $35 the witness speaks of, for instance—if the money was given to her and she gave her note for it, she is bound for it.

The question still remains, whether she is bound for the moneys advanced for the use of her daughter, even though with her own knowledge. I would be very glad to see my way to instruct you that she is not bound. If the money had been given to her by the plaintiff, and she gave her note afterwards, and she told him to take that money and expend it in a certain way, I think she would be bound to refund the money borrowed. If the money were advanced by the plaintiff, and she had directed him to advance the money to pay her daughter's expenses to Charlotte, I do not think, under the law, she could be bound. I do not find any element of purchase in that.

Gentlemen, that is my view of the law. If this money was turned over to her, I think she would be bound, that is, unless the note was obtained by fraud or unfair dealing, and then she is not bound at all. But for money advanced either with or without some previous direction, for the use of the money for the benefit of her daughter, I think she would be bound. Take the record.

The jury found for the plaintiff one hundred and fifty dollars, and judgment was duly entered thereon.

Defendant appealed, alleging error in the refusal to charge the matter requested, and in the several propositions that were charged.

*Mr. A. G. Brice,* for appellant.

*Mr. E. Brooks Sligh,* contra.

November 11, 1889. The opinion of the court was delivered by

MR. JUSTICE McIVER.    This was an action on a note for one hundred and fifty dollars, thirty-five dollars of which was money loaned by plaintiff to defendant at the time the note was given, and the balance, one hundred and fifteen dollars, was for money previously expended by plaintiff for defendant's daughter, at the request of defendant.    The real defence was, that defendant, being a married woman, had no power to make the contract sued upon.    It appeared in evidence that defendant was a married woman, and that her husband was and still is living.

It seems to me that for so much of the note as represented the borrowed money—thirty-five dollars—the plaintiff was entitled to recover, but not for the balance.    As I understand it, section 2037 of the General Statutes confers upon a married woman two separate and distinct powers : 1st. To purchase any species of property, which necessarily implies the power to bind herself by contract for the payment of the purchase money.    2nd. "To contract and be contracted with as to her separate property," after such property has been acquired, either by purchase or otherwise.    Now, while I cannot accept the view that the borrowing of money by a married woman for her own use may be regarded as a *purchase* of property, yet I do think it can be regarded a contract "as to her separate property," where the money is borrowed for her own use and not for another.    The act of *purchasing* is so very different from the act of *borrowing* that I cannot suppose that when the legislature conferred the power to purchase, that they intended to include also the power to borrow, for the rule is, that in construing a statute the words must be understood in their usual and ordinary signification, unless there is something requiring a different interpretation ; and

surely the usual and ordinary signification of the words "purchase" and "borrow" are entirely different, and one is not understood to include the other. But unquestionably money is property, and when a married woman borrows money, it at once becomes a part of her property—her separate estate—(for all property owned by a married woman must now be regarded as her separate estate), and her agreement to pay the amount borrowed, according to the terms of the borrowing, may well be regarded as a contract with reference to that property, and therefore such a contract as she is authorized to make under the second class of powers conferred by section 2037 of the General Statutes.

This case differs from the case of *Gwynn* v. *Gwynn*, next case *ante*, 482, decided at the present term of this court, for there the money borrowed never was received by the married woman, either personally or by her agent, and it therefore never became a part of her property—her separate estate—but, on the contrary, it was received and used by the husband, and the contract there could not be regarded as a contract with reference to her separate estate. So also in the case of *Aultman* v. *Gibert* (28 S. C., 303), after it had been found as matter of fact, both by the referee and Circuit Judge, that Mrs. Gibert was in fact the purchaser of the property, and the principal on the note given for the purchase money, it was very properly held that, under the first class of powers conferred by section 2037 of the General Statutes, she had the power to execute the note and was therefore liable; but her power to execute the mortgage in that case was denied, for the very good reason that her power to do so was not necessarily implied in the power to purchase, but must be sought for under the second class of powers conferred by that section, that is, the power to contract as to her separate estate. And as it appeared in that case that the property purchased was for her husband and not for herself, and never became her separate property, it was quite clear that the contract evidenced by the mortgage given to secure the payment of the purchase money of property (to use the language of the Chief Justice in that case) "in no way connected with, or contributing to, said separate estate," could not be regarded as a contract with reference to her separate estate.

I do not understand that case to decide, as some seem to suppose, that a married woman, prior to the act of 1887, had no power to execute a mortgage to secure the payment of the purchase money of property purchased by her for her own use and held as her separate estate. All that is there decided, according to my understanding, is, that a married woman had no power to make a mortgage to secure the payment of the purchase money of property bought by her, not for herself, but for her husband: that while she had the power to execute the note for the purchase money of the property so purchased, because that was implied in the unlimited power to purchase, yet she had no power to make the mortgage, because that was not necessarily implied under the power to purchase, and under the facts of that case, such power could not be derived under the second class of powers conferred by section 2037, as it was not shown to be a contract with reference to her separate estate, in the sense of those terms as interpreted by repeated adjudications of this court.

As to the one hundred and fifteen dollars, it seems to me quite clear that the plaintiff cannot recover. So far as that portion of the note was concerned, it was nothing more than an agreement on the part of the wife to pay a debt of her husband. The father and not the mother is liable for the necessary expenses of the children, and certainly a promise by the wife to pay such expenses can in no sense be regarded as a contract "as to her separate estate."

The judgment of this court is, that the judgment of the Circuit Court be reversed, and the case remanded for a new trial, unless the plaintiff shall, within twenty days after he has been served with written notice of the filing of the *remittitur* in the court below, remit on the record so much of the judgment recovered as is in excess of thirty-five dollars, together with interest thereon from the date of the note sued on to the time of the entry of the judgment, together with the costs; and if this is done within the time limited, then the judgment of this court is, that the judgment of the Circuit Court, as thus reduced, be affirmed.

Mr. Chief Justice Simpson. This is another one of those cases so frequently coming up to this court of late, under the

constitution and acts of assembly in reference to the powers of married women, and about which there is evidently a conflict of opinion in judicial minds in this State. In this state of doubt and conflict, it is to be regretted that the general assembly has not taken hold of the subject and passed an act plain and distinct, so that even he "that runs might read," thus ending the controversy. This court would not for a moment assume, however, to venture even a suggestion as to the terms of such an act, or what power should be given or refused to this invaluable and indispensable class of our people. It has confidence in the wisdom of the general assembly, and it would not hesitate to enforce any constitutional measure adopted by that body. Besides, a suggestion from us would be beyond our province and presumptuous, and we make none. In the absence, however, of such an act, we must construe the law as it stands according to our best judgment. This we have done in the past, and must do in the future, regardless of consequences and of adverse criticism. It may be that we are in error, but we are not conscious of it, and until convinced otherwise, we must stand by the opinions already pronounced. *Stare decisis* is an important safeguard in the administration of law and justice.

The facts of the case now before us seem to be as follows: the defendant, a married woman, in January, 1885, gave her note to the plaintiff for $150. The consideration of this note was $35 borrowed money, and $115 expended by the plaintiff for defendant's daughter, to wit, travelling expense to Charlotte, board bill, and medical expenses, &c., &c. At the trial the defendant requested his honor, T. B. Fraser, who heard the case, to charge that the defendant could not be held liable on the note unless the jury found from the evidence that the contract was made in reference to her separate estate, and for the benefit of her separate estate. His honor declined this request on account of the word "benefit" therein. His honor then charged as to the $35, if this sum was actually given to the defendant, she could be held liable under section 2037, General Statutes, authorizing a married woman to purchase any species of property in her own name, &c., &c. And that as to the remainder of the note, to wit, $115, if the amount was given to her, and she gave it back, with instruc-

tions to plaintiff to expend it for the benefit of her daughter, she would be liable for that also as borrowed money. The substance of the charge, as we understand it, was, that if the defendant borrowed the whole amount or any part of it, it might be regarded as a purchase of property to the extent of the amount borrowed, and under section 2037, General Statutes, *supra,* would be legal and binding; and further, that the note might be regarded as a contract with reference to her separate property, supposing the money when obtained had become her property, then the note was a contract with reference to it.

We cannot concur in these views. Borrowing is a very different transaction from purchasing. The act of assembly in question authorizes a purchase, but it is silent upon the subject of borrowing, and we know of no power on the part of the court to interpolate words in the act not found therein as originally enacted. Borrowing, then, having an altogether different meaning from the term *purchase* in the sense of the act, the money received by the defendant, to wit, the $35, or the whole amount, $150, could not and did not become her separate estate, and therefore could not be the subject of a contract in the true sense of the act, which authorized a contract by a married woman with reference to her separate estate.

Under the act, a married woman may make two classes of contracts: she may purchase property in her own name, and she may contract and be contracted with as to her separate property, &c. To make the first, she must actually purchase, not borrow; and to make the second, she must have a separate estate in advance of the contract attempted to be enforced; as there can be no such thing as a contract as to a separate estate of married women, when no such separate estate is in existence.

We do not find error in his honor's refusal to charge the defendant's request. No doubt, contracts of married women as to their separate estates are generally intended for the benefit of such estates, but they may not always prove to be beneficial, and the word benefit is not in the act.

The defence to this action may seem ungracious, to use a mild term. It appears that the defendant herself received a portion of this money at least, and that the remainder was expended for the

benefit of her sick daughter, and at the request of the defendant. Here are strong reasons why the defence should never have been interposed. But these ungracious surroundings can have no influence upon a court whose sole province it is to determine controversies according to law.

MR. JUSTICE McGOWAN. I concur in the opinion of Mr. Justice McIver, that the verdict should stand as to the thirty-five dollars borrowed by the defendant and included in the note. This court has held that a married woman may borrow money for herself and make her separate estate liable for the same by mortgege or otherwise. See *Greig & Matthews* v. *Smith*, 29 S. C., 434.

I know it cannot affect this case, as the majority of the court holds otherwise, but I confess I do not see why the judgment should not also stand for the remaining $115. As Judge McIver states, "the father and not the mother is liable for the necessary expenses of the children, and the note of the defendant for the expenses of her sick daughter at Charlotte was nothing more than an agreement on the part of the wife to pay a debt of her husband." Strictly speaking, that is true. In *Aultman & Taylor* v. *Gibert* (28 S. C., 304), it was held that "a married woman's separate property is not bound by a mortgage executed by her to secure the note of another person." So that if Mrs. Kitchens had executed a mortgage of her separate estate to secure the liability of her husband for the expenses of their daughter, it could not have been enforced. But it was also held in the same case, that "a married woman had the power to purchase property and give her note therefor," and accordingly judgment on her note was entered against Mrs. Gibert. It will be observed that in this case there is no question as to the power of the defendant to execute a mortgage. There is nothing but her note, and why may we not say in this case as to the note of Mrs. Kitchens, what was said in that as to the note of Mrs. Gibert, "Under the act Mrs. Gibert doubtless could make the purchase alleged, and if she did so, as found below, then the note was within the scope of said power"? If money is "property," I cannot clearly see the difference.

Judgment modified.