NEW ENGLAND &c. COMPANY v. BAXLEY.

1. AGENT—USURY.—Where a party makes application for a loan to the agent of a brokerage company, agreeing to pay to the brokerage company twenty per cent. of the principal and all charges, and this brokerage company obtains the loan from a land mortgage company, which takes a mortgage to secure the repayment of debt and legal interest and attorney's fees, in case of foreclosure, and pays over the full amount of the loan to the brokerage company, which retained the commission agreed upon, the lender having no knowledge of the agreement between the brokerage company and the borrower, and not participating therein, the mortgage is not usurious on its face, nor in fact in the hands of the lender.

2. IBID.—IBID.—EVIDENCE.—A transaction not usurious on its face may be shown to be so in fact, but not by the testimony of one who professes to be agent of the lender, where his own declarations are the only evidence of his agency.

3. IBID.—EVIDENCE.—The evidence in this case does not show that the agent of the brokerage company or the brokerage company itself was an agent of the lender.

4. CASE CRITICISED.—This case distinguished from Brown *v.* Brown, 38 S. C., 173.

5. PETITION FOR REHEARING refused.

Only result concurred in.

Before NORTON, J., Barnwell, March, 1894.

Action of foreclosure by the New England Mortgage Security Company against Martha A. Baxley and her junior mortgage creditors. The Circuit decree was as follows:

This is an action for the foreclosure of a mortgage of real estate, and was begun on 19th October, 1891, and came on to be heard by me at the March term, 1894, for Barnwell County. The complainant alleges that on the 10th April, 1886, the plaintiff, at the request of the defendant, Martha A. Baxley, lent her the sum of $300, and that to secure the payment of said sum, the defendant, Martha A. Baxley, made and delivered to the plaintiff her principal note, dated 10th April, 1886, and payable on 10th April, 1891, for $300, besides coupons for the interest, which is stipulated in the note to be at the rate of eight per centum per annum; that in order to secure the said note and the covenants contained in the mortgage, the said Martha A. Baxley executed and delivered to the plaintiff her mortgage, dated 12th April, 1886, and covering the lands described in the complaint. The complaint further alleges that the defendants, W. D. Stinson, L. B. Baxley, and H. M. Duncan, claim to have interests or liens upon the premises therein described, that arose subsequently to the lien of plaintiff's mortgage.

The answer of Martha A. Baxley admits the making of the papers, but pleads usury, and sets up a counter-claim for twice the amount of usurious interest, alleged to have been received by the plaintiff. The answer of the defendant, H. M. Duncan, admits the allegations of the complaint, except as to the amount due on plaintiff's mortgage, and alleges her lien on the premises to be a mortgage covering same, executed to her by the defendant, Martha A. Baxley, on the 30th May, 1886, to secure her note of even date therewith, for $100, payable one day after date, with interest at rate of ten per cent. per annum, payable annually. This answer was duly served upon the defendant,

Martha A. Baxley. To the counter-claim of the defendant, Martha A. Baxley, the plaintiff replies, denying that there was usury, but if adjudged otherwise, then pleads the statute of limitations in bar of any recovery under the counter-claim.

The cause was referred to W. Gilmore Simms, clerk, as special master, to take the testimony, and now comes on to be heard before me on the pleadings, the testimony so taken and reported by the special master, the testimony taken by commission, the testimony of the witness, J. F. F. Brewster, taken at the trial, and the exhibits. Numerous objections were made and noted by the plaintiffs to the relevancy and competency of the testimony adduced on the part of the defendant, Martha Baxley, to establish the agency relied on by her, and urged in argument at the hearing, but in the view I take of the case, it will not be necessary to pass upon them.

Of the $300, Mrs. Baxley received $215 cash, $25 was paid to W. H. Duncan for preparing abstract of her title, and $60 was retained as brokerage commissions for Duncan and the Corbin Banking Company. The decisions in our own State and elsewhere, under circumstances which are not distinguishable from those proven in this case, hold the transaction usurious. I was more impressed by the witness, Brewster, that he was thoroughly convinced that the scheme to obtain excessive interest was impregnable, than by any statement of fact which would distinguish this from the well considered cases above alluded to. It is conceded, that Mrs. Baxley is chargeable with the $215 she received. She is also chargeable with the $25 paid Duncan for preparing her abstract of title—the work was for her, and the price paid for it has not been shown to be excessive. The enormous commissions, under the circumstances, render the transaction obnoxious to our usury laws.

The defendant, Martha Baxley, has paid $87.33 as interest, of which $63.33 was paid prior to 6th August, 1889, and $24 since that date. The counter-claim was served on 6th August, 1892. The statute of limitations bars the recovery in this case, of the penalty for receiving more than lawful interest, prior to 6th August, 1889, but not since that date. The result of the findings is:

| Exceptions. | | |
| --- | --- | --- |
| Note sued on........................................ | | $300· 00 |
| Less amount called commissions........ ... | | 60 00 |
| | | ————$240 00 |
| Less interest paid..............................$87 33 | | |
| Less twice difference between interest on | | |
| $300 and $240 for one year, $24, less | | |
| $19.20—$4.80 x 2......... .. .. .......... | 9 60 | $96 93 |
| Amount plaintiff entitled to recover... | | $143 07 |

The contract to pay costs and counsel fees is not valid under the usury laws.

There is no contention as to the validity or the amount due on the note and mortgage of the defendant, H. M. Duncan. The testimony shows that on this note and mortgage there has been paid on 1st March, 1890, the sum of $40; and allowing this credit, I find the amount due on this note and mortgage, up to and including the 11th May, 1894, to be the sum of $148.49. * * *

The plaintiff appealed on the following grounds:

1. Because his honor erred in refusing to pass upon the objections made by plaintiff, and noted in the case, to the relevancy and competency of the testimony adduced for the defendant, Martha A. Baxley, tending to prove the agency of Duncan and the Corbin Banking Company with the plaintiff for the purpose of making the loan.

2. That his honor erred in not ruling out, on the objection of plaintiff, the following evidence as incompetent and irrelevant, the same being an attempt to prove agency by the acts and declarations of the very person whose agency is the question at issue: (*a.*) All testimony of the defendant, Martha A. Baxley, and of her son, L. B. Baxley (objected to by plaintiff), of declarations and statements of W. H. Duncan as to where he expected to obtain the money on the application, and his methods in obtaining the same.    (*b.*) All testimony of the said Martha A. Baxley and her son, L. B. Baxley, as to any statements or agreement by or with the said W. H. Duncan, that the loan could be renewed at its expiration.    (*c.*) All testimony of W. A. Holman as to the occupation and financial standing of the late Col. W. H. Duncan, and as to his methods of con-

ducting his business, and as to the agency of the said Col. Duncan with the plaintiff company, the same being conclusions and deductions drawn from transactions *res inter alios acta*, and from the acts and declarations of the person whose agency is sought to be established.

3. That his honor erred in holding the contract herein sued on usurious.

4. Because his honor having found that sixty dollars were retained by Duncan and the Corbin Banking Company as brokerage commissions, erred in holding that such commissions alone rendered the transaction usurious in this case.

5. Because his honor erred in holding that "the decisions in our own State and elsewhere, under circumstances which are not distinguishable from those proven in this case, hold the transaction usurious;" whereas he should have held the clear distinction rests upon the fact of the agency of the intermediaries with, and the knowledge of their charges by, the lender, and the evidence of the absence of these facts being clear, positive, and uncontradicted, he should have held the transaction valid.

6. Because his honor erred in holding that "the enormous commissions, under the circumstances, render the transaction obnoxious to our usury laws;" whereas he should have held that unless the excessive commissions were shown to have been charged by the agent of the lender and with his knowledge, the transaction would not be obnoxious to the usury laws of this State.

7. Holding the loan to be usurious, he erred in deducting the sixty dollars commissions from the face of the loan, to obtain the principal amount or value which defendant is chargeable with, to wit: $240, the same not having been received as interest, and not withheld by, nor participated in by, the lender.

8. In not holding that the "principal sum, amount, or value so lent or advanced," which, under the terms of the act of 1882, is "to be deemed and taken as the true legal debt or measure of damages," is the amount actually paid or advanced by the lender, and not the amount received by the borrower.

9. In deducting all interest paid from the amount received

by the defendant, and thereby holding that the penalty under the first section of the act of 1882 (18 Stat., p. 35,) is a forfeiture of all interest that has been paid on the usurious contract.

10. In not holding that the penalty prescribed by the first section of said act is a forfeiture of unpaid interest only, together with all costs.

11. Because his honor erred in confining the bar of the statute to the penalty imposed by the second section of the usury act, and in not holding that it barred the recovery, by set-off or otherwise, of all sums paid to, or retained by, the plaintiff or the intermediaries prior to 6th August, 1889.

12. Because his honor erred in holding that the contract in the mortgage to pay counsel fees in case of foreclosure is not valid under the usury law, and in not allowing the counsel fee provided for.

Defendant also appealed on the following exceptions:

I. His honor erred in holding defendant liable for $300, it being conceded that she actually received only $215.

II. His honor erred in not deducting from the $215 (the amount actually received) all charges made against defendant, whether called commissions, interest, or attorney's fees.

III. That in ascertaining the amount of unlawful interest received by plaintiff, his honor erred in not deducting the interest on $215, at eight per cent., for three years, seven months, and twenty days, from the amount charged defendant, whether called commission, interest, or attorney's fees, and defendant was entitled to double the difference between the two, $176.83.

IV. His honor erred in holding that the counter-claim of defendant was barred by the statute after three years; whereas the counter-claim should have been allowed entire, and the calculation should have been as follows:

Section 1, usury act 1882.

Note sued on, $300.00.

| | | |
|---|---:|---:|
| Amount actually received............................ | | $215 00 |
| Commission............................................. | $60 00 | |
| Interest.................................................. | 87 33 | |
| Attorney's fee.......................................... | 25 00 | 172 33 |
| Balance due plaintiff............................ | | $42 67 |

Section 2.

Plaintiff entitled to interest on $215 for 3
    years, 7 months, 20 days, at 8 per cent......  62 58
Charged defendant commission, interest, and
    fees ..................................................... 172 33
Difference ................................................. 109 75x2 219 50
Defendant entitled to................................        176 83

*Messrs. John T. Sloan, jr., Allen J. Green,* and *H. P. Green,*
for plaintiff.

*Mr. J. J. Brown,* for defendant.

April 15, 1895.    The opinion of the court was delivered by

MR. CHIEF JUSTICE MCIVER.    The only question presented
by this appeal is whether the Circuit Judge erred in holding
that the contract which constitutes the basis of the action was
tainted with usury, involving incidentally questions as to the
competency of the testimony.    It is true, that the exceptions,
both on the part of the plaintiff and on the part of the defend-
ant, Martha A. Baxley, present various other questions, which,
however, cannot arise unless the plea of usury should be sus-
tained, and, as we do not think that the plea of usury has been
established, these other questions need not be considered or
stated.

It appears that on the 10th of April, 1886, the defendant,
Baxley, executed her note, whereby she promised to pay to the
plaintiff, five years after the date thereof, the sum of $300, with
interest thereon at the rate of eight per centum per annum, the
interest being represented by coupons attached to the note;
and to secure the payment thereof, the said defendant, on the
same day, executed a mortgage to the plaintiff on certain real
estate situate in the County of Barnwell, S. C.    All of the in-
terest coupons except the last seem to have been paid, and this,
together with the principal, still remaining due and unpaid,
this action was commenced on the 19th of October, 1891, to
foreclose said mortgage.    The defendant, Martha A. Baxley,
answered, admitting the execution of the note and mortgage,
but pleaded usury, and set up a counter-claim for twice the

amount of the usurious interest alleged to have been received by the plaintiff. To this counter-claim the plaintiff replied, denying that there was any usury in the transaction, but if it should be adjudged otherwise, the statute of limitations was pleaded in bar of any recovery under the counter-claim.

The testimony was taken by a special master appointed for that purpose, and reported to the court, and the case was heard upon the testimony so reported, as well as certain testimony taken by commission, together with the exhibits and the testimony of the witness, Brewster, taken at the trial, all of which is set out in the "Case" by his honor, Judge Norton, who rendered his decree sustaining the plea of usury, and sustaining the plea of the statute of limitations to so much of the counter-claim as arose prior to the 6th of August, 1889, and rendered judgment in favor of plaintiff for the amount ascertained by him to be due, without costs or counsel fees, which he held invalid under the usury law. From this judgment both plaintiff and defendant, Martha A. Baxley, appeal upon the several grounds set out in the record.

The Circuit Judge, in his decree (which, together with the exceptions thereto, should be incorporated in the report of the case), uses this language: "Numerous objections were made and noted by the plaintiff to the relevancy and competency of the testimony adduced on the part of the defendant, Martha A. Baxley, to establish the agency relied on by her, and in argument at the hearing; but, in the view I take of the case, it will not be necessary to pass upon them. Of the $300, Mrs. Baxley received $215 cash, $25 was paid to W. H. Duncan for preparing abstract of her title, and $60 was retained as brokerage commissions for Duncan and the Corbin Banking Company. The decisions in our own State and elsewhere, under circumstances which are not distinguishable from those proven in this case, hold the transaction usurious. I was more impressed by the witness, Brewster, that he was thoroughly convinced that the scheme to obtain excessive interest was impregnable, than by any statement of fact which would distinguish this from the well considered cases above alluded to."

Before proceeding to consider the question raised by this

appeal, it may be as well to state certain undisputed facts appearing in the case, which may serve to render our subsequent discussion more intelligible.    Mrs. Baxley, residing in Barnwell County, and owning real estate there, desiring to borrow money, applied to one W. H. Duncan, likewise a resident of that county, who was understood to be engaged in the business of procuring loans of money upon the security of real estate. Duncan agreed to undertake to procure a loan for her of the sum of $300, and for this purpose filled out a blank application for such loan, and at the same time took from Mrs. Baxley her agreement on a separate piece of paper, whereby, after reciting that she had employed said Duncan to negotiate said loan, to be secured by her note and mortgage, she agreed to pay said Duncan the sum of $60 in full of his commissions and the commissions of those whom he employed to assist him in securing the said loan, and also agreed to furnish an abstract of title to the property she proposed to mortgage, and to pay the fees for recording said mortgage.

These papers were forwarded by Duncan to the Corbin Banking Company, a concern which had been for many years engaged, in the city of New York, in doing a general banking business, as well as loan brokers.    That company forwarded the application, but not the agreement to pay commissions, to the plaintiff company, with an inquiry whether they would make the loan upon the terms mentioned in the application. The plaintiff company agreed to do so, and accordingly the note and mortgage, upon which this action is based, were executed by Mrs. Baxley, and sent by Duncan to the Corbin Banking Company, who in turn sent them to the plaintiff, and thereupon the full amount called for by the note, $300, was sent by plaintiff to the Corbin Banking Company, who, after deducting its share of the commissions under the arrangement between it and Duncan, forwarded the same to said Duncan, who applied $25 of it to the payment of his fee for preparing the abstract of title, and $15 to his share of the commissions under the arrangement between him and the Corbin Banking Company, and paid over the balance, to wit: $215, to Mrs. Baxley, in cash.    Under these undisputed facts, it is clear that

the plaintiff paid over to those who were acting for Mrs. Baxley in procuring the loan, the full amount of money mentioned in the note, and neither charged nor received any interest in the excess of the rate allowed by law; indeed, did not contract for as great a rate of interest as the law then allowed, for, under the law as it stood at the time this contract was entered into, ten per cent. interest could lawfully have been contracted for in writing; whereas, in this contract, the rate of interest was fixed at eight per cent. It is very manifest, therefore, that this transaction, upon its face, does not show the slightest trace of usury.

But this does not conclude the inquiry, for if the borrower can show that, notwithstanding the fact that the contract, on its face, does not show usury, yet, as a matter of fact, there was usury in the tranaction, he is at liberty to do so; but the burden of proof is upon the borrower to show this, for it is well settled that usury is an affirmative defence, and must be pleaded and proved by the party who sets up such a defence. *Ex parte Monteith,* 1 S. C., 227; *Bank* v. *Miller,* 39 *Id.,* 193. The inquiry, therefore, is whether Mrs. Baxley, the defendant, has shown that there was any usury in the transaction. This she has undertaken to show, by attempting to show that the excessive charge of commission which she was required to pay, and did pay, to her agents, Duncan and the Corbin Banking Company, for their services in procuring the loan from the plaintiff, was at least known to, if not participated in by, the plaintiff at the time the contract was entered into. We do not understand that it is claimed that this was established by any direct testimony to that effect, for, as matter of fact, there was no such testimony, and, on the contrary, as we shall presently see, the testimony was exactly the other way.

But it is contended that it must be presumed from the alleged fact that, while Duncan and the Corbin Banking Company may have been the agents of Mrs. Baxley in procuring the loan, they were also the agents of the plaintiff company in making the loan. It will be observed that the Circuit Judge makes no finding of fact upon this point; he simply says that "the decisions in our own State and elsewhere, under circumstances which are not

distinguishable from those proven in this case, hold the transaction usurious;" but he entirely omits to say what facts or circumstances were proven in this case, "and declines to make any ruling upon the competency of the testimony adduced on the part of the defendant, Martha Baxley, to establish the agency relied on by her." We are, therefore, left to form our own conclusions, not only as to the competency of the testimony objected to, but also as to its effect, entirely untrammeled by any finding by the Circuit Judge.

First, as to the competency of the testimony offered to establish the fact that Duncan was agent of the plaintiff company, raised by plaintiff's second exception. We think it is too clear to admit of argument that the fact of agency cannot be proved by the declarations of the alleged agent; for, while it is true that after the fact of the agency has been established by evidence aliunde, the acts and declarations of the agent within the scope of his agency are binding on the principal; yet it is well settled that the declarations or acts of the alleged agent are not competent to prove the fact of agency. As is said in *Martin v. Suber*, 39 S. C., at page 535: "It would be a very dangerous doctrine to establish, that one person could be made liable for a debt contracted by another simply by the declarations of the person contracting the debt that he was acting as agent of the person sought to be charged.". See, to same effect, 1 Greenl. Ev., p. 158, note b, and the cases there cited; also *Renneker v. Warren*, 17 S. C., 139. It seems to us that the objections to the testimony of Duncan's declarations, relied on to establish the fact that he was agent of the plaintiff, were well taken. Rejecting this incompetent testimony, there is literally no evidence either showing or even tending to show that either Duncan or the Corbin Banking Company were the agents of the plaintiff company.

But, even if that testimony could be received, it would only tend to show inferentially, and that, too, by not very palpable inference, that they were such agents, while a careful examination of the testimony will show that such inference is completely rebutted, and the overwhelming weight of the evidence shows conclusively that the relation of agency

never did exist between either Duncan or the Corbin Banking Company and the plaintiff.    To this effect is the clear, explicit, and positive testimony of the witness, Cook, a member of the Corbin Banking Company, and of the witness, Brewster, the president of the plaintiff company.    It is somewhat difficult for us to understand what seems to be a slur cast upon the witness, Brewster, by the Circuit Judge, when he says that he was "more impressed by the witness, Brewster, that he was thoroughly convinced that the scheme to obtain excessive interest was impregnable than by any statement of fact which would distinguish this from the well-considered cases above alluded to."    In view of the palpable fact that this witness testified distinctly and positively, and as, in justice to him, we must add, with apparent candor and truthfulness, that he never knew, or even heard, that what is called "excessive interest" in the shape of commissions had been charged by the Corbin Banking Company and Duncan until more than a year after the loan had been negotiated and the money paid over, and his statement to this effect, fortified by the letters—written testimony—which will be presently more particularly mentioned, it is impossible for us to conceive of any just ground for the insinuation that Mr. Brewster was anxious to make it appear that the "scheme" referred to was "impregnable"—a scheme in which neither he nor his company had any interest, and knew nothing of, except what he heard on the trial of this case. For although having heard a rumor that such a charge of commissions was being made by the Corbin Banking Company, this witness immediately—on the same day—wrote a letter, under date of 31st of October, 1887, more than a year after this loan was effected, inquiring whether there was any foundation for such a rumor, to which he received a prompt reply, assuring him that "the whole thing is a fabrication."

Our next inquiry is, whether the facts of this case, as thus set forth, bring it under the decisions upon which the Circuit Judge relies to sustain his conclusion.    It will be observed that he refers to no case by name in his decree, but simply says, "decisions in our own State and elsewhere;" but he manifestly alludes to the case of ·Brown v. Brown, 38 S.

C., 173, and the cases therein cited. We think that this case
differs widely from the case of *Brown* v. *Brown*, for the very
fact upon which that case rested is absent here.   There the
loan in question was made by the American Freehold Land
Mortgage Company, a company doing business in London, Eng-
land, and, therefore, likely to employ agents in this country;
while here the loan was made by a different company, doing
business in Boston, Mass.   This, it is conceded, is not a very
marked difference between the two cases, and, perhaps, if it
was the only difference, might not be sufficient to distinguish
the one case from the other.   But the other differences to which
we shall refer are marked and fundamental.   In *Brown* v.
*Brown* it was found as matter of fact, and it is mentioned in
the opinion of this court as a material fact, that the agreement
to pay the exorbitant commissions was forwarded to the lenders
with the application for the loan, before it was made; while
here there is no such finding, and not only no evidence upon
which to base such a finding, but the evidence is the other way.
Again, in the Brown case the Circuit Judge found, as a matter
of fact, that both Duncan and the Corbin Banking Company
were acting as the agents of the plaintiff company, and that
the lenders not only knew of, but actually participated in, the
benefits of the exorbitant commissions exacted; while in this
case there is not only no such finding of fact, but no evidence
to warrant any such finding.   On the contrary, the overwhelm-
ing weight of the evidence shows conclusively that neither
Duncan nor the Corbin Banking Company ever were agents of
the plaintiff company, and that the plaintiff knew nothing
whatever of the agreement on the part of Mrs. Baxley to pay
Duncan, and those whom he might employ, the exorbitant
commissions for their services; and certainly not a shred of
testimony even tending to show that the plaintiff expected to
receive, or did receive, any benefit whatever from such charge
of commissions.

It is very obvious that the court assumed as one of the facts
in the Brown case (whether correctly or not it is needless now
to inquire) that the agreement to pay the $1,500 commission
was known to the lenders at the time they made the loan, for

Mr. Justice McGowan, in delivering the opinion of the majority of the court, referring to that agreement, uses this language: "The above agreement was a part of the original application for the loan, which was forwarded and accepted, and the papers drawn in accordance with it were sent back and signed." He then proceeds to the inquiry whether the knowledge thus acquired by the lenders of the agreement to pay these exorbitant commissions would taint the loan with usury, and, after conceding that there was conflict of authority upon the point, concludes in these words: "If they (the lenders) knew the facts when the proposition was made and accepted, the loan will be held to be usurious," and cites several cases to sustain that proposition. So that it is apparent that the decision in that case rested upon the finding of fact by the Circuit Judge, accepted by the Supreme Court, that the lenders, at the time of making the loan, knew of the excessive charge of commissions. In the present case there has been no such finding of fact, and could not have been under the evidence; and hence the case of *Brown* v. *Brown* affords no authority whatever in this case. It may be proper to add that, although counsel for appellant asked and obtained leave to assail the decision in *Brown* v. *Brown*, this court, under the view which has been taken of that decision, does not deem it necessary to the decision of this case to enter upon that inquiry; but the writer of this opinion may be permitted to say that, while he fully recognizes the authority of that case, he still adheres to the views expressed in the dissenting opinion in that case.

. The judgment of this court is, that the judgment of the Circuit Court in this case be reversed, and that the case be remanded to that court for such further proceedings as may be necessary to carry into effect the views herein announced.

MR. JUSTICE POPE and MR. JUSTICE GARY concurred in the result.

In this case there was a petition for rehearing, which was refused by an order passed May 14, 1895,

PER CURIAM. After a careful consideration of this petition, the court is unable to discover that any material fact or prin-

ciple of law has been either overlooked or disregarded, and hence there is no ground for a rehearing. It is, therefore, ordered, that the petition be dismissed, and the stay of the remittitur heretofore granted be revoked.