## 7311

### AMERICAN MORTGAGE CO v. WOODWARD.

1. MORTGAGES — CONSTITUTIONAL LAW. — WHERE A MARRIED WOMAN acquired real property in 1881, under the act of 1870, the proceeds of a mortgage executed by her thereon is her separate property, and she had the right to use it in paying an unsecured debt of her husband for supplies used in farming the lands. Under these facts the Court will not consider whether section 2037 of General Statutes of 1882 is unconstitutional when applied to a married woman's contract, in respect to land acquired by her under the act of 1870.

2. PRINCIPAL AND AGENT—USURY.—A banking company, which paid the money on a loan on execution of the notes and mortgages to another, afterwards holding the papers and collecting them for the mortgagee, is held to be the agent of the mortgagee, and a collection of 20 per cent. commissions by a local agent for himself and the banking company for effecting the loan is held to make the transaction usurious, as the knowledge of the agent with respect to the collection of commissions is imputable to the principal.

3. NOTES—MORTGAGES.—Where a note does not provide on its face for eight per cent. interest annually, but the mortgage securing it does, the note may be enforced according to its terms, supplemented by the terms expressed in the mortgage. .

Before PRINCE, J., Aiken, September, 1908.   Modified.

Action by American Mortgage Company of Scotland, Limited, against Mrs. A. G. Woodward. From judgment for plaintiff, defendant appeals.

*Messrs. Croft & Croft,* for appellant cite: *A collecting bank is the agent of the holder of a note:* 7 Wall., 451; 93 U. S., 385; 51 L. R. A., 499. *Wife could not lawfully borrow money to pay husband's debts, if lender knew how it was to be used:* 33 S. C., 232; 30 S. C., 97; 31 S. C., 492; 29 S. C., 492; 32 S. C., 499. *The act of 1882 operated on all mortgages given by married women, without respect to when land was acquired:* 16 S. C., 269; 18 S. C., 191; 41 S. C., 115; 15 S. C., 593; 33 S. C., 260; 28 S. C., 125; 13 Rich., 237; 29 S. C., 516; 7 S. C., 88; 17 S. C., 313 *Reten-*

*tion of commissions renders transaction usurious:* 38 S. C.,
173; 49 S. C., 357.  *Note draws interest at 7 per cent.
after maturity:* 25 S. C., 149; 33 S. C., 210; 30 S. C., 61;
35 S. C., 61; 33 S. C., 142.

*Messrs. A. J. & H. P. Green,* contra, cite: *Cases holding
both ways as to the agency of intermediaries:* 37 S. C., 88;
38 S. C., 173; 44 S. C., 81, 478; 49 S. C., 346; 65 S. C.,
105.   *Married woman can not be deprived by subsequent
statute of property right previously acquired:* 35 S. C., 42;
16 S. C., 256; 18 S. C., 191; 41 S. C., 110; 15 Wall., 610;
15 S. C., 432.   *Contract is binding, no matter to what use
the money was put:* 31 S. C., 490; 38 S. C., 516; 31 S. C.,
125; 29 S. C., 426; 31 S. C., 209, 436; 23 S. C., 314; 34
S. C., 176; 35 S. C., 42; 36 S. C., 45; 38 S. C., 519; 44
S. C., 478; 52 S. C., 515.   *Usury must be pleaded:* 22 S.
C., 370; 44 S. C., 81.   *Recording and abstract fee will not
render contract usurious:* 49 S. C., 346.

October 12, 1909.   The opinion of the Court was deliv-
ered by

MR. CHIEF JUSTICE JONES.   The plaintiff, a corporation
under the laws of Great Britain and Ireland, brought this
action against defendant to foreclose a mortgage upon real
estate in Aiken county, S. C., and the suit resulted in a
decree of foreclosure by Judge Prince, dated September 7,
1908, for the sum of $1,527.13.

The first question we notice is whether the mortgage is
invalid, on the ground that the mortgagor was a married
woman at the time of its execution, March 12, 1886, and
the contract was not "as to her separate estate," as
required in section 2037, General Statutes, 1882.

Judge Prince held that Mrs. Woodward, having
acquired the property in 1881, under the statute of 1870,
then in force, had unlimited power to mortgage her land,
and that the limitation of her power, with respect to her

vested property rights, was unconstitutional; but if not, then the facts show a contract for the benefit of her separate estate, within the limitations of section 2037.

Since we agree with the Court as to the last proposition, we do not deem it proper or needful to inquire as to the constitutionality of section 2037, as applied to the contract in issue, on the principle that such a question should not be considered unless it is necessary to the decision of the case.

Mrs. Woodward herself testified that her estate derived the benefit of this money so far as it went to pay off the mortgage to Kennedy. It appears that she and her husband resided on her land, and that her husband conducted the farming operations and secured the supplies from Kennedy. Mrs. Woodward testified: "Mr. Woodward had the land cultivated. He looked after all that business for me. Mr. Woodward bought the supplies for the place." The payment of the prior mortgage was undoubtedly for the benefit of the estate. *Reid* v. *Stevens,* 38 S. C., 527, 17 S. E., 358. The testimony satisfies us that the defendant borrowed the money for herself, as an original undertaking and not as a surety for her husband. The money resulting from the loan being her separate property, she had the right, of course, to apply it to the payment of the unsecured debt to Kennedy for supplies in the management of her property, even if the debt stood against her husband. *Howard* v. *Kitchens,* 31 S. C., 490, 10 S. E., 224.

The next question is whether there was usury in the transaction. From the loan of $400, $80 was deducted as commissions, of which Duncan received one-fourth and Corbin Banking Company three-fourths. Besides this, $25 were deducted for abstract of title, etc., and $3.50 for recording the mortgage, leaving the sum of $291.50 actually received for the purposes of the loan. The Circuit Court held there was no usury.

There is no usury on the face of the notes and mortgage. The note for $400, dated March 12, 1886, was payable five years after the date, with interest from date at eight per cent. per annum, payable annually, as per five interest notes attached, the note containing a stipulation that should any of said interest not be paid when due it shall bear interest at the rate of ten per cent. per annum from maturity. The mortgage contained a covenant to pay the $400 on March 12, 1891, with interest from date until paid, at the rate of eight per cent. per annum, payable annually, according to the one promissory note and the coupons thereto attached. The coupon notes were so drawn as to make the interest payable on December 1st, of each year, at the rate of eight per cent., except the last coupon note, which was for $41.07, payable on March 12, 1891. The difference between this note and the notes between the first and last coupon notes is accounted for by the fact that it included interest from December 1, 1889, to March 12, 1891. When these notes were executed it was lawful to contract in writing for interest at ten per cent. per annum, which involved the right to contract in writing for such rate on overdue interest.

As the defendant contracted to furnish abstract of title and pay for recording papers, and as it does not appear that the charges therefor were unreasonable, we eliminate such charges from the consideration of the question of usury.

We are to consider whether the retention of twenty per cent. from the loan, as commissions, constitutes usury. The evidence shows that the commissions were received by Duncan and the Corbin Banking Company, and there is no evidence that plaintiff actually received any portion of the same. The question then arises whether Duncan and the Corbin Banking Company were agents for plaintiff in the transaction, and, if so, whether the knowledge and acts of such agents were such as to affect the transaction with usury.

The Circuit Court held that Duncan and the Banking Company were agents of the defendant, relying upon the testimony of Frederick Cook, the general manager of the Corbin Banking Company, and J. K. A. Sherwood, the agent of the plaintiff for the purpose of accepting or rejecting applications for loans, that Duncan and the Banking Company were not agents of plaintiff, but of defendant; and also relying upon an instrument in writing, signed by defendant, in these words:

"Whereas, I have this day employed W. H. Duncan to negotiate for a loan of $400, for a term of five years, with interest at the rate of eight per cent. per annum, upon a note and mortgage securing the same, which shall be a lien upon my farm in Aiken county, S. C.

"Now, then, if he shall succeed in negotiating said loan within thirty days, upon the usual conditions exacted by eastern money lenders, as to security, perfecting of title, insurance, etc., I agree to pay the said W. H. Duncan the sum of $80, which shall be in full of all commissions and the commissions of those whom he employs to assist him in making said negotiations. I agree to furnish an abstract of title to the farm and to pay the fee for recording my mortgage. Dated January 29, 1886. A. J. Woodward."

Recognizing the rule that it is incumbent on appellant to show that the conclusion of the Circuit Court is against the preponderance of the evidence, we are constrained to hold that the circumstances show that Duncan and the Corbin Banking Company also acted in the transaction as agents for plaintiff.

The method of negotiating such loans has been so often before the Court that it is unnecessary to give any detailed statement. This Court has considered substantially the same question in a number of cases. *Bates* v. *American Mortgage Company of Scotland,* 37 S. C., 88, 16 S. E., 883; *Brown* v. *Brown,* 38 S. C., 173, 17 S. E., 452; *American Freehold Land Mortgage Co. of London* v. *Felder,* 44

S. C., 478, 22 S. E., 598; *Land Mortgage Investment Co.* v. *Gillam,* 49 S. C., 346, 26 S. E., 990; *Blackwell* v. *British Mortgage Co.,* 65 S. C., 105, 43 S. E., 395. And in all these cases this Court affirmed the conclusion of the Circuit Court, based upon the circumstances, that the intermediaries were agents of the lender, or at least were agents of both lender and borrower.

The contrary conclusion was expressed in the opinion of Chief Justice McIver in *New England Co.* v. *Baxley,* 44 S. C., 84, 21 S. E., 444, wherein the other justices concurred in the result. In the case of *Mortgage Co.* v. *Gillam, supra,* the Court was evenly divided, but the result was an affirmance of the judgment of the Circuit Court, holding the intermediaries to be the agents of the lender. It seems that all that could be said against this view was stated in the dissenting opinion of Chief Justice McIver. This decision, although by a divided Court, is a precedent. The last case, *Blackwell* v. *Mortgage Co., supra,* seems to be conclusive that this Court, upon testimony substantially as in the case at bar, would affirm the conclusion of the Circuit Court, holding the intermediaries the agents of the lender. In such a situation, in case the Circuit Court on the same facts should hold the intermediaries not agents of the lender, we think that the proper course is for this Court to reverse the conclusion as contrary to the preponderance of the evidence and avoid the anomaly of a concurrence in contrary conclusions, based upon the same facts. The statement of parties as to the question of agency is not always conclusive, and the Court should look beyond the declarations to all the facts and circumstances, and deduce from them the real truth of the matter. In addition to the facts relied upon in the prevailing opinion in *Mortgage Co.* v. *Gillam, supra,* and in *Blackwell* v. *Mortgage Co., supra,* it appears that the business of plaintiff was the loaning of its funds upon improved real estate in the United States, and that Sher-

wood was its agent "for the purpose of accepting or reject-
ing applications for loans."

Sherwood had nothing to do with the collection of the
loan, principal or interest, and this was done by Corbin
Banking Company, the notes being made payable at the
bank of that company. It is incredible that plaintiff for
the conduct of its business had no other agent in this
country except Sherwood, whose duty was to accept or
reject applications for loans. A printed notice by Corbin
Banking Company to the borrower warns the borrower that
the principal and interest of all loans negotiated through
the Corbin Banking Company are payable only at the com-
pany's office, No. 115 Broadway, New York, and that no
payments or remittances elsewhere would be recognized
until the money reaches the company's office. If Corbin
Banking Company was agent for plaintiff, to hold these
securities and collect them, it is natural to inquire who was
custodian of plaintiff's funds to be loaned on mortgage of
farm lands in the South? It does not appear that Sher-
wood was such agent, as his duty was merely to accept or
reject applications for loans. This question is answered
by Mr. Cook, the manager of the Corbin Banking Company,
in this language: "When the application had been accepted
by J. K. O. Sherwood, upon the provision that the abstract
of title shows all liens paid, and the mortgage to the plaintiff
company a first lien upon the land, in sending the papers
to W. H. Duncan, for execution by Mrs. A. J. Woodward,
the Corbin Banking Company sent their own check for the
money, for the reason that the plaintiff company would not
part with their money until the note and mortgage, duly
executed and acknowledged, together with an abstract of
title, were placed in their hands, and it was very often the
case that borrowers refused to execute the mortgage and
have it placed on record without the money; and in such
cases, to assist the negotiation, we forwarded our own
check, so that on the execution and recording of the mort-

gage the funds were then turned over to the borrower; and upon the return of the executed papers, and final acceptance by the lender, the money in full for the amount of the loan was paid over to the Corbin Banking Company by the lender." It thus appears that, upon approval of the application for the loan by Sherwood, the Corbin Banking Company sent the money for the borrower by its own check. There must have been a delivery of the mortgage as an executed paper to some one representing the plaintiff before it was placed on record, and it is assuming great credulity of the Court to ask it to believe that there was no real delivery of the mortgage to plaintiff until after the mortgage was placed on record and the borrower had received the money loaned. We have, then, the Corbin Banking Company paying over the money on the execution of the papers as if it were the lender, or acting by authority of the lender, and afterwards acting as lender's agent in holding the securities and collecting them.

As Corbin Banking Company was agent for plaintiff in this transaction, its knowledge with respect to the commissions is imputable to the plaintiff.

The rule of law on this subject, established by the great weight of authority, including cases from our own State, is that the receiving of excessive and unreasonable commissions by the agent of the lender with the knowledge, actual or constructive, of the principal, renders the transaction usurious, if such commissions and the interest added exceed the lawful rates. *Brown* v. *Brown,* 38 S. C., 173, 17 S. E., 452; *Land Mortgage Company* v. *Gillam,* 49 S. C., 345, 26 S. E., 990; *Vahlberg* v. *Keaton,* 4 L. R. A., 462; Note to *France, Admr.,* v. *Munro,* 19 L. R. A. (N. S.), 391. We regard a charge of twenty per cent. of the amount of the loan as commissions unreasonable and excessive for any service rendered by Duncan and the Corbin Banking Company for the benefit of the defendant. We hold, therefore, that the transaction in question is usurious.

With respect to the construction of the notes and mortgage, as to the matter of interest, we think there was no error, as alleged in the exception. While the notes did not provide for the payment annually of eight per cent. interest on the principal after maturity, the contemporaneous mortgage by independent covenant did, and payment of the interest (but for usury) might have been enforced according to the terms of the mortgage, supplementary to the terms of the note. *Nicholas* v. *Briggs,* 18 S. C., 484; *Plyler* v. *Elliott,* 19 S. C., 263.

The penalty for usury, however, under the Statute of 1882, in the absence of any counterclaim, as in this action, restricts recovery to the principal sum advanced, which in this case was four hundred dollars, less the twenty per cent. commissions; hence, the question as to the method of calculating interest is not material. This, however, does not affect the right of plaintiff to recover the forty dollars provided in the mortgage as attorney's fee and allowed by the Circuit Court.

The plaintiff is, therefore, entitled to recover judgment of foreclosure for only three hundred and twenty dollars, in addition to forty dollars as attorney's fee, without interest or costs.

The judgment of the Circuit Court is modified, in accordance with the views above announced, and the cause remanded for further proceedings under the judgment so modified.