### THE LAND MORTGAGE CO. v. GILLAM.

1. Issues—Circuit Judge—Reversing Order.—A Circuit Judge is not reviewing a previous Circuit order, refusing to refer issues to a jury, by sending out issues, because he may refer issues to enlighten his own conscience, independently of sec. 274*a* of the Code.

2. This Exception too general, and not in proper form. Method of excepting to matter not passed on by Circuit Judge stated. *Divided Court.*

3. Evidence—Agency may be shown by the acts of the agent and surrounding circumstances.

4. Agent—The Finding of Fact, that the Corbin Banking Company was the agent of plaintiff in placing the loan, sustained. *Divided Court.*

5. Ibid.—Usury.—Where the agent of mortgagee, *with its knowledge*, retains twenty per cent. from the principal of a loan as commissions, and then accepts eight per cent. interest on face of note, it is usury. *The Court is divided as to the fact that plaintiff knew these commissions were retained.*

6. Counter-Claim—Usury.—Statute of Limitations.—Claim for penalty for accepting usurious interest is not barred in three years when set up as a counter-claim. Mr. Chief Justice McIver *dissenting.*

7. Usury—Counsel Fee not allowed in this case, because contract *held* to be usurious, and under such contract plaintiff can only recover amount actually advanced.

8. Insurance—Damages.—In this case, the mortgagee was required to keep the house insured for one-third of the amount loaned, and upon

its failure to do so, and the destruction of the property by fire, the mortgagor can recover such one-third with interest.

9. PETITION FOR REHEARING refused.

Before GARY, J., Edgefield, June, 1896.    Affirmed.

Action in foreclosure by the Land Mortgage Investment and Agency Company of America, Limited, against Mattie S. Gillam, S. B. Burton, and Bank of Edgefield, asking for a sale of the mortgaged premises and a judgment for deficiency, and was begun on 14th October, 1892. The complaint, which was served on the defendant, Mattie S. Gillam, on 23d November, 1892, alleges that on the 24th day of December, 1886, the plaintiff, at the request of the defendant, Mattie S. Gillam, advanced and lent her the sum of $1,000, and thereupon the said defendant made and delivered to the plaintiff her principal note, dated on that day and payable on 24th December, 1891, at the office of the Corbin Banking Company in New York city, for $1,000, besides coupons for the interest due before maturity, interest is stipulated in said note to be at the rate of eight per cent. per annum, payable annually; that in order to secure the said note and the covenants contained in the mortgage, the said Mattie S. Gillam executed and delivered to the plaintiff her mortgage, dated January 1st, 1887, recorded January 29th, 1887, covering the lands described in the complaint. The complaint also alleges that the said mortgage contains covenant on part of mortgagor that in the event of foreclosure of mortgage in Court, the mortgagor agrees to pay attorney fee of $100, for which the said mortgage shall stand as security; and the complaint further alleges that the defendants, the Bank of Edgefield and S. B. Burton, claim to have interests or liens on the mortgaged premises that arose subsequently to the lien of plaintiff's mortgage.

The answer of the defendant, Mattie S. Gillam, which was served on December 13th, 1892, is as follows:

The defendant, Mattie S. Gillam, answering the complaint herein by Croft & Chafee, her attorneys:

1. Admits that she signed such a note and mortgage as are referred to in the complaint, but that she did not receive the amount of money called for by said note and mortgage, but that she only received the sum of $775, the sum of $25 being retained by the plaintiffs for the purpose of insuring the buildings on the premises of this defendant, and the further sum of $200 was retained by Fred. T. Lockhart, the agent of the plaintiff, as commissions for the benefit in part of said company; and this defendant was required to pay interest on the whole amount of said note, which makes the interest paid in fact by this defendant at the rate of ten per cent. per annum on the money actually borrowed by this defendant, and that said contract is, therefore, usurious, and the plaintiff is not entitled to recover any interest upon the principal sum of said note.

2. This defendant, further answering the complaint herein, and by way of counter-claim, alleges that she has paid to the plaintiff the sum of $80 for interest on the 1st day of December, 1887, and the sum of $80 on the 1st day of December, 1888, 1889, 1890, respectively, the same being charged as interest on the said note. That this defendant only received the loan of $800, although her note was given for $1,000, so that the interest actually paid by this defendant to the plaintiff was at the rate of ten per cent. per annum on the money borrowed, and that the plaintiffs are, therefore, guilty of usury in making such contract, and in receiving such amount of interest; and that by reason of such unlawful act on the part of the plaintiffs this defendant is entitled to receive of the plaintiffs the sum of $192, with interest on $48 from the 1st day of December, 1887, and interest on $48 from the 1st day of December, 1888, and interest on $48 from the 1st day of December, 1889, and interest on $48 from the 1st day of December, 1890.

3. This defendant, further answering the complaint herein,

and by way of a second counter-claim, alleges that at the time of the execution of said note and mortgage, the plaintiffs, through their agent, retained $25 of the money which was charged in the loan to this defendant, which they alleged was for the purpose of insuring the buildings on the mortgaged premises, for the purpose of securing said loan, and which insurance the plaintiffs, through their agent, agreed to take out to the amount of $1,000, but that the plaintiffs and their agent were so negligent and unmindful of their agreement, that they failed so to do.

4. That on or about the 12th day of December, 1891, the dwelling house on said premises was destroyed by fire, thereby causing a loss to and damage to this defendant in the sum of $1,000, and this defendant charges that said loss and damage was caused solely by the negligence of the plaintiffs and their agent to effect said insurance as they agreed to do, to the damage of this defendant in the sum of $1,300.

5. This defendant, further answering the complaint, denies each and every other allegation therein contained, which has not hereinbefore been specifically admitted. Wherefore, this defendant demands judgment that the complaint be dismissed.

2. For the sum of $192, with interest as aforesaid, as demanded in the first counter-claim.

3. For the sum of $1,300, her damage sustained, as alleged in the second counter-claim.

4. For such other relief as may be just, and the costs of this action.

*Exhibit 2.*

The Corbin Banking Company, No. 115 Broadway, N. Y. [Stamp.] In order to save the wrapper notice instruction on the back how to open. New York, Feb. 9, 5.30 P. M. '87. M. S. Gillam, Winter Seat, S. C. No. 41315. Very important! 1st. Preserve this carefully. 2d. If you sell your farm, give this to the purchaser. 3d. The payments named below must be made at "The Corbin Banking Company's office" in New

York, promptly, with all charges prepaid. Better always have money there a few days before due. Failure to pay promptly causes the whole debt to become due, and the mortgage may be foreclosed at once. 4th. In thirty days after you send remittance you should have an answer. ·If you do not, write the company for explanation. 5th. Always refer in every letter to the No. of your loan, as at the head of this paper. 6th. It is important to keep this paper, because you will get no further notice, and this gives the amounts to be paid, and when, and a failure to pay as named exposes you to danger of costs and trouble. 7th. The principal and interest of all loans negotiated through the Corbin Banking Company are payable only at the company's office, No. 115 Broadway, N. Y. 8th. The company has no agents who are authorized to receive payments. 9th. No payments made to bankers or others for remittance will in any case be recognized until the money reaches the company's office. 10th. Money paid elsewhere than at said office will be at borrower's own risk. 11th. Payments mature as follows: December 1st, 18 . Interest, $ . Commission note, $ December 1st, 1887. Interest, $74.66. Commission note, $ December 1st, 1888. Interest, $80.00. Commission note, $ December 1st, 1889. Interest, $80.00. Commission note. $ December 1st, 1890. Interest, $80.00. Commission note, $ December 24, 1891. Interest, $85.34. Commission note, $ December 24, 1891. Principal, $1,000.

### *Exhibit 3.*

The Corbin Banking Company, 192 Broadway and 11 John street, New York, 1–16–92. Mrs. Mattie A. Gillam, No. 901 Broad st., Augusta, Ga.—Dear Madam: We have yours of the 13th, stating that on the 12th of December your house burned down, and you stated the fact to Mr. Lockhart, and asked him to communicate with us, and he has told you that he could not hear from us in relation to this matter. His letter, dated December 19th, was received by us December 23d in relation to this matter. We replied

to him on the 24th of December, stating that no policy had
been sent us in connection with your loan; that no demand
was ever made by the lender or us for such policy. If, as
you state, you paid Mr. Lockhart a premium for insurance,
you will have settle with him that matter. Allow us, how-
ever, to call your attention to the fact that your loan is de-
linqnent since December 24, 1891, at which date principal
and interest amounted to $1,085.34. It is necessary that
you should communicate to us what you are going to do in
relation to this payment. Yours truly, The Corbin Bkg. Co.

*Exhibit "D"—Agreement.*

Edgefield County, S. C., January 1st, 1887. The Corbin
Banking Company. I hereby constitute you my agents,
and request and authorize you as such to negotiate for me
a loan of $1,000, on five years' time, with interest at eight
per cent. per annum, payable annually, at such place as
you may name; said loan to be evidenced by my note of
the form used by you; and said note and loan to be secured
by a mortgage on or an absolute deed (consented to by my
wife) to my farm, consisting of 264 acres, situated about
five miles of the town of Troy, in Edgefield County, South
Carolina. Said mortgage or deed is to be of the form used
by you, and in case an absolute deed is given, the lender
to give bond to reconvey said property to me on compli-
ance with the terms and conditions stated therein, accord-
ing to the printed blanks used by you in pursuance of
sections 1969, 1970, and 1971 of the Code of Georgia of
1873, interest to commence on the day this application is
accepted by the lender from whom you obtain the money.
I further agree to pay you for negotiating said loan a com-
mission of $200, to be paid at the time of closing the loan;
and if I decline to accept the loan for any reason, I agree
to pay said commission at once. I also authorize you to
pay off all liens (including taxes due) against said property;
and I hereby certify that the total amount of indebtedness
against said property does not exceed $   . I hereby au-

thorize you to insure said property for $     , for     years, in such company as you may select, and pay the premium out of the loan.   I further certify that there has been no building or improvement to building made on said premises during the last three months.   I also hereby agree to pay the cost of recording my deed or mortgage, as also the cost of an abstract of title covering property offered as security for this loan.   Mattie S. Gillam.

South Carolina, Edgefield County.   Personally appeared before me, Mrs. Mattie S. Gillam, and made oath she signed the within agreement for the uses and purposes herein mentioned.   Sworn to before me, January 6th, 1887.   [L. S.] Wiley Timmerman, Notary Public So. Ca.

The Circuit decree is as follows:

This is an action by the plaintiff to foreclose a mortgage executed by the defendant, Mattie S. Gillam, on her house and lot in Edgefield County, on the 1st day of January, 1887, to secure the payment of a note made by her on the 24th day of December, 1886, in the sum of $1,000, and more particularly described in the complaint.   The defendant, Mattie S. Gillam, admitted in her answer to the said complaint that she signed the said note and mortgage, but alleged that she did not receive the amount of money therein mentioned; that she only received the sum of $775, the sum of $25 having been retained by the plaintiff for the purpose of insuring the dwelling on said premises, and the further sum of $200 being retained by Fred. T. Lockhart, the agent of the plaintiff, as commissions for the benefit in part of said company; that she was required to pay interest on the whole amount of said note, and that the interest paid on the amount actually loaned was at the rate of ten per cent. per annum, and, therefore, usurious.   The defendant, Mattie S. Gillam, also set up a counter-claim, alleging that she has paid to the plaintiff as interest the sum of $80 on the 1st day of December, 1887, 1888, 1889, and 1890, respectively, and that by reason of this usurious interest she is entitled to recover

from the plaintiff the sum of $192, with interest, as therein mentioned. She also set up a counter-claim for $1,300 damages, alleged to have been incurred by reason of the fact that the plaintiff failed to insure her house, which was destroyed by fire on the 12th day of December, 1891—the said sum of $25, as she alleges, having been reserved from the money borrowed for the purpose of insuring said building.

The plaintiff replied to the counter-claim, denying the same; and pleaded the statute of limitations as to payments of usurious interest, made three years prior to the 12th December, 1892 (the date of the service of the counter-claim). The real issues in the case, therefore, are: 1st. Usury; and, 2d. The liability of the plaintiff for damages incurred by reason of the failure to insure the building which was destroyed by fire.

I will first consider the question of usury. The case of *Brown* v. *Brown*, 38 S. C., 173, decides that, if the plaintiff has knowledge, at the time the contract was entered into, of the exorbitant commissions charged by the Corbin Banking Company, then such contract was usurious. After a careful consideration of all the testimony, I am inclined to the opinion that the Corbin Banking Company acted as the agent of the plaintiff in negotiating the loan, and also that the plaintiff had actual knowledge of the "*exorbitant*" commissions charged by the Corbin Banking Company. But now, if such was not the case, I am satisfied, and find as matter of fact, that the facts and circumstances connected with the loan were sufficient to have put the plaintiff on inquiry, and that such inquiry, if it had been pursued with due diligence, would have disclosed the fact that the "*exorbitant*" commissions aforesaid would have been charged. *Black* v. *Childs*, 14 S. C., 312; *Aulman* v. *Moy*, 34 S. C., 561. The litigation throughout the country to which this plaintiff has been subjected on account of the exorbitant commissions which the Corbin Banking Company has for years been charging, and the great number of loans which the Corbin Banking Company has negotiated with the

plaintiff (so many that it could not tell the number), were sufficient to have caused inquiry in any one, except those who might find it to their advantage to remain in ignorance of the facts. The defense of *usury* is, therefore, sustained.

The plea of the statute of limitations is overruled, as it has no application to this case.

The remaining question in the case arises out of the defense interposed by way of counter-claim, alleging damages sustained by the defendant on account of the plaintiff's failure to insure her dwelling house according to agreement. It appears that, at the time the note and mortgage were executed, Mr. F. T. Lockhart retained the sum of $25 of the money which was charged in the loan to this defendant for the purpose of insuring the dwelling house on the mortgaged premises. He failed to have the building insured, which was destroyed by fire on or about the 12th day of December, 1891. An issue of fact was framed, submitting to a jury the question as to the value of the said dwelling house at the time it was destroyed by fire. The jury rendered a verdict, finding that said building was of the value of $1,053.90 at the time of the fire. I find as a matter of fact that the plaintiff agreed to insure the property destroyed by fire as aforesaid. I also find as a matter of fact that the dwelling house was of the value of $1,000, and should have been insured, under the said agreement, for three-fourths of its value, to wit: $750. I, therefore, sustain the verdict of the jury to this extent.

I conclude, as matter of law, that the second counter-claim should be sustained to the amount of $750, with interest thereon from the date of said fire.

It is ordered and decreed, that this cause be referred to the master for Edgefield County to compute the amount now due, in accordance with the principles herein announced, and that the parties hereto have leave to apply at the foot of this decree for such orders as may be necessary to carry into effect the views herein stated.

From this decree the plaintiff appeals.

*Messrs. Allen J. Green* and *John T. Sloan,* for appellant, cite: *Order referring issue to jury after previous Circuit order referring to master is void:* 16 S. C., 362; 47 S. C., 547; 13 S. C., 368; 21 S. E. R., 3; 3 Strob., 36. *Usury:* 39 S. C., 175; 37 S. C., 579; 38 S. C., 173; 44 S. C., 93; 20 U. S. C. C. of App., 306; 1 S. C., 227. *One dealing with agent must show authority to bind principal:* 10 Rich. L., 338; 27 S. C., 134; 39 S. C., 535; 33 S. C., 231; 44 S. C., 478; 96 Ga., 227; 82 Ga., 299; 58 Fed. R., 613. *Lender must participate in usurious charges:* Rev. Stat., 1390, 1391; 54 Ark., 40; 13 Stewart Eq., 502; 43 N. J., 15; 100 Ill., 611; 141 U. S., 402; 58 Fed. Rep., 613. *Statute of limitations:* 18 S. C., 282.

*Messrs. G. W. Croft* and *Sheppard Bros.,* contra, cite: *Any Judge may refer issues to jury:* 21 S. E. R., 3. *Proof of agency:* 22 S. E. R., 601; 33 S. C., 233; 31 S. C., 89. *Usury:* 38 S. C., 173; 32 Fed. Rep., 113; 145 W. Rep., 769.

The opinions in this case were filed on April 3, 1897, but the remittitur was stayed on petition for rehearing until

May 11, 1897. The opinion of the Court was delivered by

MR. JUSTICE GARY. The facts out of which the issues herein arose, are set forth in the Case, and they, together with the decree of his Honor, Judge Gary, will be incorporated in the report of the case.

The appellant's exception to the order of Judge Townsend is as follows: "Plaintiff excepts to the order of Judge Townsend, of 16th August, 1895, referring certain issues to a jury; because the said order is without jurisdiction and void, in that it disregards and reverses the order of Judge Witherspoon, refusing to refer issues to a jury in this case." Even if it should be conceded that the defendant, Mattie S. Gillam, was precluded by the order of his Honor, Judge Witherspoon, dated 23d March, 1893, from having a trial by jury, under section 274a of the Code, as to the issue tried by the jury before

Judge Gary, this exception could not be sustained. Independently of section 274*a* of the Code, the Circuit Judge has the right, in a chancery case, to refer issues to a jury for the enlightenment of his conscience. *Hammond* v. *Foreman*, 43 S. C., 264. The order of Judge Townsend must be regarded as an exercise of this right. No doubt this was why Judge Witherspoon refused to vacate the order of Judge Townsend, and why Judge Gary decided the issue of fact which had been referred to the jury, which he would not have had the power to do if the issue had been referred to the jury, under section 274*a* of the Code.

The first exception to Judge Gary's decree is as follows: "1. That his Honor erred in not ruling out, on the objection of plaintiff, as incompetent and irrelevant, the following testimony: (*a*) All the testimony of Mattie S. Gillam and J. B. Gillam, her husband, as to acts and declarations of Fred. T. Lockhart at the time of the transaction, tending to show whom he represented, and for whom he was acting in the transaction, the same being an attempt to prove agency, by the acts and declarations of the very person whose agency is the question at issue. (*b*) All the testimony of Mattie S. Gillam and her husband, as to the agency of Fred. T. Lockhart with the plaintiff company, the same being conclusions and deductions drawn from the acts and declarations of the person whose agency is sought to be established." This exception is too general for consideration, in that it fails to point out any particular error—*Sims* v. *Jones*, 43 S. C., 99—and for the further reason, it does not appear that the Circuit Judge ruled, or was requested to rule, on the competency of said testimony. If the Circuit Judge had been requested to rule on the competency of said testimony, and had failed to do so, the proper exception would have been to complain of error on the part of the Circuit Judge in failing to rule upon its competency, but not of error in not ruling out said testimony. *Willis* v. *Tozer*, 44 S. C., 16.

But even waiving all technical objections to the excep-

tion, it cannot be sustained.   J. B. Gillam and Mattie S. Gillam both testified that Lockhart was acting as the agent of the Corbin Banking Co., but neither of them testified to any declarations of Lockhart that he was the agent of plaintiff or any one else.   The acts of Lockhart, tending to show whom he represented, were competent evidence, to be considered, in connection with the other facts in the case, in determining the question of agency.

The second exception to Judge Gary's decree alleges error in holding that the contract sued on was usurious.   In reaching a conclusion upon this question, it is very important to determine whether the Corbin Banking Co. was the agent of the plaintiff in negotiating the loan.   After carefully considering all the testimony in the case, the Court is of the opinion that the Corbin Banking Co. was the agent of the plaintiff in negotiating the loan, and that it was in pursuance of a scheme on the part of the plaintiff and the Corbin Banking Co. to evade the usury laws; and, as might naturally be expected in such cases, the question of agency has, to a great extent, to be shown by circumstances instead of direct evidence.   Without attempting to detail all the circumstances inducing such belief, we will mention some which are very material: The witness, J. B. Gillam, says: " * * * that the interest called to be paid in 1887, 1888, 1889, and 1890, he paid by sending to the Corbin Banking Co. * * * Every time that witness would send this money the Corbin Banking Co. would send him back an interest coupon * * * The plaintiff never called upon him for any money.   All the communications were from the Corbin Banking Co."   To the same effect is the testimony of Mrs. Mattie S. Gillam.   The circular and the letter of the Corbin Banking Co. to Mrs. Gillam, marked "exhibit 2" and "exhibit 3," which will be set out in the report of the case, also tend strongly to prove agency on the part of the Corbin Banking Co.   The testimony tended to show that all papers were prepared by the

Corbin Banking Co., that they sent the money to be disbursed, collected all interest for the plaintiff, sent the coupons to the defendant, Mattie S. Gillam, when they were paid, required all the money to be paid to the Corbin Banking Co., and all communications were to be addressed to said company. The testimony also showed that the plaintiff made other loans through the Corbin Banking Co.

Having determined the question of agency, we proceed to consider the question of usury. The mortgage sued upon was executed on 1st January, 1887; to secure note of 24th December, 1886, for $1,000, payable in five years, with annual interest until paid at the rate of eight per cent. per annum, unpaid interest to bear interest after maturity at the rate of ten per cent. per annum, and also an attorney's fee of ten per cent. of the principal and interest due, as provided in the notes and mortgage. When the loan was consummated, the Corbin Banking Company deducted commissions, amounting to $200, besides other sums hereinafter mentioned. This was done with knowledge on the part of the plaintiff. Under the case of *Brown* v. *Brown*, 38 S. C., 173, these facts constitute usury. The appellant asked and was granted leave to review the case of *Brown* v. *Brown*, *supra*. This case has been affirmed in subsequent cases by reference to its authority; and, after careful consideration, this Court sees no reason to depart from its principles. The appellant's attorneys contend that even if the contract was rendered usurious by deducting the $200 commissions, still it was not usury for the plaintiff to receive the interest, as it did not exceed ten per cent. per annum on the amount which the defendant, Mattie S. Gillam, actually received, to wit: $800—the law at the time of the contract allowing the lender to charge ten per cent. where it was expressed in a written instrument. There might be force in this argument were it not that the agreement as to commissions and the payment of interest formed parts of a single transaction. Sections 1390 and 1391 of the Rev. Stat. are as follows: Section 1390. "No greater

rate of interest than (7) seven per centum per annum shall
be charged, taken, agreed upon or allowed upon any con-
tract arising in this State for the hiring, lending or use of
money or other commodity, except upon written contracts,
wherein, by express agreement, a rate of interest not ex-
ceeding eight per cent. [formerly ten] may be charged.
No person or corporation lending or advancing money or
other commodity upon a greater rate of interest shall be
allowed to recover in any Court in this State any portion
of interest so unlawfully charged; and the principal sum,
amount or value so lent or advanced, without any interest,
shall be deemed and taken by the Courts of this State to
be the true legal debt or measure of damages, to all intents
and purposes whatsoever, to be recovered without costs. * *
Section 1391. Any person or corporation who shall re-
ceive as interest any greater amount than is provided for
in the preceding section shall, in addition to the forfeiture
therein provided for, forfeit, also, double the sum received,
to be collected by separate action or allowed as a counter-
claim to any action brought to recover the principal sum."
Usury as to the $200 commissions falls within the provi-
sions of the section first set out, while that arising from
the receipt of unlawful interest comes within the other
section.   Under the first section, the lender can only col-
lect the amount actually advanced without costs; but under
the second section, the lender *receiving* unlawful *interest*
shall also forfeit double the sum so received, collectable in
a separate action or allowable as a counter-claim to an action
to recover the principal sum.

The third exception complains of error on the part of the
Circuit Judge in overruling the plea of the statute of limit-
ations.   The appellant contends that the claim for
an usurious charge of interest is in the nature of a
penalty, and is barred after three years before the
commencement of the action.   This view is in direct con-
flict with section 1391, *supra*.   Under that section the party
who has paid usurious interest has two remedies, one is to

bring a separate action, and the other is to set up a counter-claim to the action for the sum lent to him. Without undertaking to say what effect the statute of limitations would have, where a separate action is brought, the statute of limitations has no application to this case.

The next exception complains of error on the part of the Circuit Judge in not allowing the counsel fee provided for in the mortgage. The intention of section 1390 is to allow the plaintiff to recover *only* the sum actually advanced; and to allow a fee for foreclosure of the mortgage would be to add to the statute. The plaintiff is not even allowed costs, and for as strong a reason counsel fees cannot be allowed.

The fifth exception questions the correctness of his Honor's ruling in regard to the insurance. This exception is partly disposed of by what has been said hereinbefore as to agency. The facts show that the plaintiff was bound by the agreement, and we will proceed to consider whether there was error as to the amount allowed. The fifth section of the mortgage shows that the property was to be insured to an amount equal to *one-third* of the principal of the loan. The true principal of the loan was $800. One-third of $800 is, therefore, the amount which should be allowed, with interest from the date of the fire.

The sixth exception cannot be sustained, because the defendant, Mattie S. Gillam, was not notified that the property had not been insured.

It is the judgment of this Court, that the judgment of the Circuit Court be modified as to the amount due for failure to insure the property, but that in all other respects it be affirmed.

MR. JUSTICE POPE concurs in the above opinion.

MR. CHIEF JUSTICE McIVER, *dissenting*. Being unable to concur in all of the views presented by Mr. Justice Gary in his opinion in this case, I propose to state, briefly, the points upon which I dissent. Inasmuch as there was abun-

dant evidence in the testimony of Cook, the general manager of the Corbin Banking Company, to show that Lockhart was the agent of that company, it does not seem to me that appellant's first exception to the decree of his Honor, Judge Ernest Gary, presents any practical question in this case. The testimony of the defendant and her husband, as I understand it, did not tend to show that Lockhart was the agent of the *plaintiff company*, but that he was the agent of the Corbin Banking Company, and as that fact was proved by other testimony, it does not seem to me to be material to inquire whether the testimony objected to was incompetent. But I do not desire to be understood as holding either that such testimony was competent or that the exception was too general to be considered. On the contrary, I think it is not competent to prove agency by the acts or declarations of the alleged agent, and I think the exception was not too general, as it not only points out the testimony objected to, but states the ground of such objection.

The main inquiry is, whether there was any usury in the contract which constitutes the basis of the plaintiff's cause of action. The defense of usury being an affirmative defense, the burden of proof is upon the defendant, unless the usury appears upon the face of the contract itself. *Ex parte Monteith*, 1 S. C., 227; *Bank* v. *Miller*, 39 S. C., 193, and *New England Co.* v. *Baxley*, 44 S. C., at page 90. Now, as it is apparent that the contract here in question does not show usury on its face, the practical inquiry on this branch of the case is, whether the defendant has shown, by the preponderance of the evidence, that there was usury in the contract under consideration. It is attempted to show this by the fact that the defendant agreed to pay, and did pay, the Corbin Banking Company, alleged to be the agent of the plaintiff company, for negotiating the loan, a commission of $200—twenty per cent. of the amount of the loan. This agreement is set forth in exhibit D, copied in the "Case," and should be incorporated in the report of

this case., By this agreement, the defendant, after appointing the Corbin Banking Company *her* agents, and requesting and authorizing them to negotiate for her a loan of $1,000, on five years' time, with interest at eight per cent. per annum, payable annually, "at such place as you may name," further agreed to pay them, for negotiating said loan, a commission of $200, "to be paid at the time of closing the loan; *and if I decline to accept the loan, for any reason, I agree to pay said commission at once*" (italics mine). The plaintiff's name nowhere appears in that agreement, nor is there any allusion therein made to the plaintiff, or any one else, except the Corbin Banking Company and the defendant. Indeed, it does not appear that, at the time this agreement was made, any agreement had been made with the plaintiff to make the loan. It was, therefore, an agreement between the Corbin Banking Company and the defendant exclusively, and, so far as appears from the paper, no other person or persons had any interest in or concern with it. The words which I have italicized above show very clearly that the sole and only consideration for the obligation by which the defendant bound herself to pay the said sum of $200 was the skill, knowledge, and services of the Corbin Banking Company in negotiating the loan desired by the defendant, together with any expenses which that company might incur in negotiating such loan; for, otherwise, it would be impossible to account for the fact that the defendant, by those words, obligated herself to pay the stipulated commissions, even if, for any reason, the defendant declined to accept any loan which may have been negotiated for her by the Corbin Banking Company. This is quite sufficient to show that the agreement on the part of the defendant to pay to the Corbin Banking Company the twenty per cent. commissions was not at all dependent upon, nor in any way connected with, any contract the defendant might afterwards enter into to pay the amount of money which might be loaned to her, for, as we have seen, she was still bound to pay those commissions, whether she

accepted the loan or not. It seems to me very plain that this agreement, exhibit D, did not even tend to show that there was any usury in the subsequent transaction between the plaintiff and defendant, whereby she obtained a loan of $1,000, and gave the note, which is the foundation of this action, for the repayment of the same.

It is contended, however, that the Corbin Banking Company was the agent of the plaintiff company, and, therefore, the latter company must be presumed to have known of the agreement between the defendant and the Corbin Banking Company, in reference to the twenty per cent. commissions. In the first place, I am unable to find any evidence in the record showing any such agency. There certainly is no direct evidence. Indeed, all the direct evidence is to the contrary. Both Cook, the general manager of the Corbin Banking Company, who conducted this transaction for that company, and Sherwood, who acted for the plaintiff company, emphatically deny any such agency, and there is literally no direct testimony to the contrary. But as agency may be proved, by facts and circumstances as well as by direct testimony, it is necessary to consider the circumstances relied upon by respondent to show agency. The first circumstance relied upon is the fact that the note as well as the interest coupons were all made payable at the office of the Corbin Banking Company, and that such of the interest coupons as have been paid were paid there, and the coupons returned to the defendant by that company. This circumstance is not entitled to any consideration, for common experience shows that it is a very common thing to make a note payable at some bank, and surely that circumstance does not even tend to show that such bank was the agent of the payee in *making the contract* evidenced by the note. The utmost that can be claimed for it is that it may show that such bank becomes the agent of the payee of the note for the purpose of receiving and forwarding the amount paid on the note. It may and oftentimes does happen that the bank at which a note is made payable knows nothing of

the contract evidenced by the note—does not even know
that any such contract had been made until the note is sent
to it for collection.    That circumstance, therefore, does not
even tend to show that a bank or banking house at which
a note is made payable knew anything of the contract evi-
denced by the note, and of course has no tendency to show
that such bank or banking house was the agent of the payee
of the note *in making the contract*.    But again, it appears
from the testimony of Cook, the general manager of the
Corbin Banking Company—and this testimony is not con-
tradicted by any other witness—that when the defendant
applied to the Corbin Banking Company to negotiate the
loan for her, and entered into an obligation to pay that
company the twenty per cent. commissions, he, Cook, who
managed the whole transaction, did not know from whom
he would be able to obtain such a loan, but, to use the
commercial phrase, had to "try the market," in order to
ascertain from whom he would be able to obtain such
loan.    How, therefore, the Corbin Banking Company could
be regarded as acting as the agent of some unknown prin-
cipal when the agreement for the payment of the twenty
per cent. commissions was made, I am utterly unable to
comprehend.    The testimony is abundant and uncontra-
dicted, showing not only that the plaintiff company never
received, and never expected to receive, any part of the
twenty per cent. commissions, but *did not know*, and had
no reason to suspect, that the defendant had agreed to pay
such commissions to the Corbin Banking Company.    In
this respect, this case differs very materially from the case
of *Brown* v. *Brown*, 38 S. C., 173, in which the decision
was rested wholly upon the ground that the lender of the
money *knew*, at the time the loan was made, that the bor-
rower was required to pay the twenty per cent. commissions.
Mr. Justice McGowan, in delivering the opinion of the
Court, speaking of the agreement for the payment of the
commissions, uses this language: "The above agreement
was a part of the original application for the loan which

was forwarded and accepted, and the papers drawn in accordance with it were sent back and signed." Again, he says: "The decisions on the general subject are not at all in accord; but without attempting to review and reconcile the numerous cases cited, we think the weight of authority makes that depend upon the question of fact, whether the contract to pay an excessive and unreasonable amount, such as what is here called 'commissions,' to the middleman (no matter by whom made), *was known* to those who furnished the money upon it. *If they knew* the facts when the proposition was made and accepted, the loan will be held to be usurious" (italics mine). Again, he says: "No denial is made in this case that the mortgagees had knowledge of the contract as to the taking of the $1,500" (the amount agreed to be paid as commissions). Finally, he, says: "Whether the mortgagees did or did not derive benefit, directly or indirectly, from the $1,500, which was not a reasonable or proper charge for any services rendered, we cannot doubt that *they had knowledge* that such contract had been made, when they accepted the terms proposed, and remitted the money" (italics mine). These quotations from the opinion of the Court in the Brown case conclusively show that the decision in that case rested exclusively upon the fact that the lenders there *had knowledge* of the agreement to pay the twenty per cent. commissions at the time the loan was made, and that fact tainted the loan with usury. Such was the construction placed upon the case of *Brown* v. *Brown* by this Court, in the subsequent case of *New England Company* v. *Baxley*, 44 S. C., 81, where it was held that in the absence of knowledge of, or participation in, the charge of the twenty per cent. commissions on the part of the lender, there was no usury in the transaction. Indeed, the case last cited is so nearly identical with the case now under consideration, so far as the question of usury is concerned, that, *mutatis mutandis*, the opinion in that case might well be used as the opinion in this case, on the question of usury. In the Brown case, the Court found

that the agreement to pay the twenty per cent. commissions was a part of the original application, and was forwarded to and accepted by the mortgagees when the money was loaned, while here, as well as in the Baxley case, there was no such finding, and could not have been, under the uncontradicted evidence in this case; for here both Cook, the general manager of the Corbin Banking Company, and Sherwood, the salaried officer of the plaintiff company, testify that the only papers delivered to Sherwood were the "application" for the loan, and the abstract of title, in neither of which was there any allusion made, or any reference to the agreement for the payment of the twenty per cent. commissions, which was contained in a separate paper of a different date; in addition to which, both of those witnesses testify that the plaintiff company had no knowledge of the agreement to pay commissions, when the loan was made, and there is, literally, no testimony to the contrary.

Another circumstance relied on in behalf of the respondent, is the fact testified to by Cook, that no charge was made against the plaintiff company for collecting such of the interest coupons as were paid at the office of the Corbin Banking Company. I do not see how that circumstance can affect the question. Granting that the Corbin Banking Company, *after the loan was effected*, became the agents of the plaintiff company to collect the money loaned and the interest thereon, as it became payable, and chose to make no charge against the plaintiff for making such collections, that is not sufficient to show that the Corbin Banking Company was the agent of the plaintiff company *in effecting the loan*, and the fact that no charge was made for making such collections throws no light upon the question. It is not difficult to conceive of a good reason why no such charge should be made. The evidence shows that the Corbin Banking Company was engaged in the business of negotiating loans to persons who were desirous of borrowing, and that they were in the habit of charging a high rate of commissions for their services in negotiating such loans. It

was, therefore, quite natural, that in order to retain and increase such profitable business, that they should encourage money lenders to accept applications made by them for loans to third persons, by agreeing to collect and forward, without charge, money paid at their office.

Another circumstance relied on—in fact, .the one upon which the Circuit Judge seems mainly to rely, to show plaintiff's knowledge of the charge of commissions—is "the litigation throughout the country to which this plaintiff . has been, subjected, on account of the exorbitant commissions which the Corbin Banking Company has for years been charging, and the great number of loans which the Corbin Banking Company has negotiated with the plaintiff (so many that it could not tell the number), were sufficient to have caused inquiry in any one except those who might find it to their advantage to remain in ignorance of the facts." It seems to me that this statement has been made under an entire misapprehension of the testimony. A careful examination of the evidence, as set out in the "Case," fails to disclose any testimony tending to show that the plaintiff company was ever before engaged in any litigation, either in this State or elsewhere, "on account of the exorbitant commissions which the Corbin Banking Company has for years been charging," or on any other account; and as to the other branch of the statement in regard to the great number of loans which the Corbin Banking Company had negotiated with the plaintiff, the witness, Sherwood (the only witness examined upon this point), did not say that there were so many that he could not tell the number, for in the tenth cross-interrogatory, as to "how many loans have you negotiated through the Corbin Banking Company for the plaintiff," this witness replied: "It is impossible for me to tell how many loans were made by the plaintiff company on applications submitted by the Corbin Banking Company;" *not*, however, because they were so many that he could not tell the number, but for the obvious reason, stated by this witness in his answer to the

first cross-interrogatory, that he left the service of the plaintiff company in September, 1888, more than four years before this action was commenced, and, of course, more than four years before he was examined as a witness in this case, and, therefore, not having access to the plaintiff's books, it was impossible for him to tell, *not* how many loans had been negotiated through the Corbin Banking Company for the plaintiff, but "how many loans were made by the plaintiff company on applications submitted by the Corbin Banking Company." The form of the question was calculated to imply that the plaintiff negotiated loans *through* the Corbin Banking Company as its agent, whereas the form of the answer negatives any such implication, and shows that the true nature of the transaction was just what the plaintiff's contention has been throughout the case, to wit: that when the Corbin Banking Company desired to obtain this loan for the defendant, it applied to the plaintiff company to make the loan, and that company being satisfied with the terms offered, agreed to make, and did make, the loan, paying over the full amount, $1,000, to the Corbin Banking Company, who had applied for the loan, without any knowledge on the part of the plaintiff company as to the disposition which the Corbin Banking Company intended to make, or did make, of the money received from the plaintiff company. This being, in my judgment, the true nature of the transaction, as shown by the testimony in this case, there was clearly no usury; for the plaintiff company paid over the full amount of the money mentioned in the note to the person or company authorized by defendant to receive it, charging interest thereon at a rate less than that then allowed by law, without receiving or expecting to receive any *bonus* or other compensation for making such loan, and not knowing that any one else was to receive any such *bonus*. It seems to me, therefore, that the defendant has utterly failed to establish the defense of usury. If, then, there was no usuary in the transaction, I am unable to see any reason why the plaintiff should not

be allowed to recover the ten per cent. counsel fees stipulated for in the note.

But even if it could be held that usury had been shown, then I think there was error in holding that the statute of limitations had no application to the case. Section 94 of the Code provides that, "Civil actions can only be commenced within the period prescribed in this title, after the cause of action shall have accrued, except where, in special cases, a different limitation is prescribed by statute, and in the cases mentioned in sec. 93." In subdivision 2 of sec. 113, the period prescribed is three years, "in an action upon a statute, for a penalty or forfeiture, where the action is given to the party aggrieved, or to such party and the State, except where the statute imposing it prescribes a different limitation." These provisions show beyond dispute that an action for a penalty or forfeiture imposed by statute must be commenced within three years from the accrual of the cause of action, except where the statute imposing the penalty or forfeiture prescribes a different period, unless the action had been commenced or the right of action had accrued before the adoption of the Code in 1870, as provided in sec. 93. Now, in sec. 1390 of the Rev. Stat. of 1893, the rate of interest is fixed by law at seven per cent., "except upon written contracts, wherein, by express agreement, a rate of interest not exceeding eight per cent. may be charged"—though at the time when the contract upon which this action is based was entered into, the limit fixed by law was ten instead of eight per cent. The section goes on to provide that one who lends money, &c., upon a rate of interest greater than that allowed, shall not be permitted to recover in any court anything more than the principal sum loaned, without interest or costs. In the next section, 1391, the provision is as follows: "Any person or corporation who shall receive as interest any greater amount than is provided for in the preceeding section, shall, in addition to the forfeiture therein provided for, forfeit also double the sum so received, to be collected by a separate action, or

allowed as a counter-claim to any action brought to recover the principal sum." Now, if the defendant had brought a separate action against the plaintiff to recover double the amount received as interest in excess of the amount allowed by law, I do not see how it could be doubted, under the express statutory provisions above quoted, that such an action would be barred by the statute of limitations, unless it was commenced within three years after the accrual of the cause of action, which, of course, would be when the usurious interest was paid, for the statute imposing this penalty or forfeiture prescribes no other period of limitations. This would be so, necessarily, unless it could be successfully contended that section 1391 operated as a repeal, by implication, of the statute of limitations, so far as the actions therein spoken of are concerned. But such a contention could not be successfully maintained without a plain disregard of the well settled rule as to repeals by implication, and the equally well settled rule that statutes penal in their character must be given a strict construction. Moreover, the statute (section 113 of the Code) fixing the period within which an action for a penalty of forfeiture must be brought, having expressly excepted from its operation cases in which the statute imposing such penalty or forfeiture prescribes some other period of limitation, surely the courts have no authority to extend such exception to a case like this, in which the statute imposing the penalty or forfeiture does not prescribe any other period of limitation. The next inquiry is, whether the same rule should be applied where, as in this case, the claim for double the excess of interest is set up by a counter-claim and not by a separate action. I am unable to conceive of any reason why it should not. A counter-claim is in the nature of a cross-action, and should be governed by the same rule, so far as practicable. Accordingly it was held in *The State* v. *Corbin*, 16 S. C., 533, following *State* v. *Baldwin*, 14 S. C., 138, and *Treasurers* v. *Cleary*, 3 Rich., 374, that in an action brought by the State, the defendant could not plead a counter-claim, be-

24—49

cause such a plea was in fact a cross-action, and the State cannot be sued except by its own consent. It seems to me clear that when a defendant sets up, by way of counter-claim, a demand against the plaintiff, and demands judgment for the amount thereof, that such demand is subject to the plea of the statute of limitations.

The next inquiry, then, is whether the statute of limitations is arrested by the commencement of the action in which the counter-claim is set up, or continues to run on until the counter-claim is filed. That question is determined by the case of *Holley* v. *Rabb*, 12 Rich., 185, where it was held that, as against a discount, the currency of the statute of limitations is not arrested by the commencement of the action, but continues until notice of set-off is given, and if the demand be then barred, the plea of the statute will avail and defeat the discount. This decision was rested largely upon the ground that a set-off or discount was in the nature of a cross-action. The reasoning employed in that case shows that the same doctrine should be applied to a counter-claim. I think, therefore, that the defendant's claim for any money paid as interest in excess of the rate allowed by law, more than three years before the 13th of December, 1892, when the answer, setting up the counter-claim, was served, is barred by the statute of limitations. In this connection it may not be amiss to say, though the Circuit Judge does not specially mention the matter, that I think the amount claimed by defendant in her answer, $192, exceeds the amount which she is entitled to claim, even conceding that there was usury in the transaction. That amount seems to have been obtained by assuming that the lawful rate of interest was only seven per cent., and that defendant was entitled to double the difference between seven per cent. and ten per cent. on $800, the amount assumed to have been actually loaned; whereas I think the plaintiff was entitled, under the terms of the contract, to charge eight per cent., that rate being stipulated for in writing, and was, therefore, the lawful rate of interest, and

hence in no event could the defendant claim more than double the difference between eight per cent. (the lawful rate *in this case*) and ten per cent. on the $800.

The only remaining inquiry is as to the counter-claim for damages arising from the neglect of Lockhart to insure the property.   Of course, under my view that neither Lockhart nor the Corbin Banking Company were the agents of the plaintiff *in negotiating and effecting this loan*, the plaintiff could not be held liable for any damages which the defendant may have sustained by reason of the neglect of Lockhart to insure the property.   But even if it could be held that Lockhart was acting as the agent of the plaintiff company in negotiating and effecting this loan, I am unable to discover any evidence whatever which even tends to show that Lockhart was acting as agent of the plaintiff in undertaking to effect the insurance on the property for the defendant. It will be observed that, by the express terms of the mortgage, the defendant assumed the obligation to insure the property, and no obligation whatsoever rested upon the plaintiff company to effect such insurance.   The provision in the mortgage as to insurance was entirely permissive, so far as the plaintiff company was concerned, and there is not a particle of evidence that the plaintiff ever desired or intended to avail itself of such permission.   I do not see, therefore, how in any view of the case Lockhart can be regarded as having acted as the agent of the plaintiff in undertaking to insure the property for the defendant.   To so hold, would be to hold that Lockhart was acting as the agent of the plaintiff, in doing an act which the plaintiff was under no obligation to do, and which, so far as appears, the plaintiff never desired or expected to do.   It seems to me, therefore, that if the defendant has any claim against any one, it is against Lockhart and not against the plaintiff. But in any event there was clearly an error in allowing the defendant to recover three-fourths of the value of the house instead of one-third of the principal sum loaned, as is fully shown in the opinion of Mr. Justice Gary.

I think, therefore, that the judgment of the Circuit Court should be reversed, and the case remanded to that Court for the purpose of carrying out the views herein announced.

MR. JUSTICE JONES.    I concur in this dissenting opinion, except as to the plea of the statute of limitations, as to which I concur in the opinion of Mr. Justice Gary.

Petition for rehearing refused

PER CURIAM.    This petition is based upon the sole ground that this Court being equally divided, a rehearing should be granted in order that the Circuit Judges may be called to the assistance of this Court, so that the questions involved may be authoritatively determined.    This ground having been considered in the case of the City of Florence *v.* E. A. Brown, and there held to be untenable, it is sufficient to refer to the opinion in that case, filed to-day, for the reasons for our conclusion.

It is, therefore, ordered, that this petition be dismissed, and that the stay of the remittitur heretofore granted be revoked.