2190

Douglas P. BROWN and Carol H. Brown, Appellants v.
C & S REAL ESTATE SERVICES, INC., Respondent.

(445 S.E. (2d) 463)

Court of Appeals

*Leon Martin Ortner,* Charleston, *for appellants.*

*Robert A. Kerr, Jr.* and *Julius H. Hines,* both of *Buist, Moore, Smythe & McGee,* North Charleston, *for respondent.*

Heard April 14, 1994.

Decided June 6, 1994.

CURETON, Judge:

After their home was destroyed by Hurricane Hugo, Douglas and Carol Brown brought this action against their mortgagee, C & S Real Estate Services, Inc., seeking damages for the mortgagee's alleged failure to procure adequate insurance on their real and personal properties. The trial court granted summary judgment in favor of C & S on all but a negligence cause of action. After presentation of the Browns' case on the negligence cause of action, the court granted a directed verdict in favor of C & S. The Browns appeal. We affirm.

Mrs. Brown and her first husband[1] purchased a house on the Isle of Palm in 1967 for $14,750. According to Mrs. Brown, she specifically asked an agent of C & S[2] at the real estate closing whether there was enough insurance on the house. The agent of the bank replied that she was "well covered" and "don't worry about it."[3]

The mortgage document signed by Mrs. Brown provides that the mortgagor has the responsibility for maintaining sufficient insurance. Nevertheless, the bank, on at least one occasion, procured additional insurance on the property using escrow funds included in the Browns' monthly mortgage payments.[4]

Over the years, pursuant to an inflation clause in the policy, the amount of insurance was increased periodically to reflect the increased value of the insured property. The bank paid the increases in premiums from escrow funds. The bank also added earthquake insurance in 1980. The Browns did not request this change in coverage, and claimed they relied on C & S to attend to their changing insurance needs. The

[1] Mrs. Brown acquired title in her name after divorcing her first husband. Mr. and Mrs. Brown were married in 1972, and have lived in the Isle of Palms home since that time.

[2] Carolina National Mortgage Investment Co., Inc., a predecessor in interest to C & S Real Estate Services, Inc., lent the money to purchase the residence. Hereinafter, any reference to C & S will also encompass its predecessor Carolina National.

[3] At this time, flood and earthquake coverage were not available for the property. The Browns concede they were in fact "well covered" in 1967.

[4] The mortgage document in the record is a standard Veterans Administration mortgage form with the standard provision relative to the establishment and maintenance of an escrow account.

Browns filed three claims against their insurance policy through the insurance agency servicing the policy. Additionally, the Browns made a coverage change directly through the agency.

When Hurricane Hugo hit the South Carolina coast in September of 1989, the Browns' home was completely destroyed. It was only at this point the Browns learned that their home and contents were not, and never had been covered by flood insurance. Their insurance policy contained an exclusion for any loss resulting from water damage as a result of "flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind." Mrs. Brown testified they were not aware of this exclusion because they did not receive a copy of the actual policy until after the hurricane. They had, nevertheless, periodically received declaration pages and amendments to the policy which they believed constituted the policy. The Browns admit they never specifically requested flood insurance.

The trial court granted C & S's motion for a directed verdict on the basis that the Browns failed to establish a duty on the part of C & S to add flood coverage to the policy. The trial judge reasoned that under no reasonable interpretation could the isolated remarks, "you are well covered," and "don't worry about it" be interpreted as an express or implied agreement by C & S to monitor coverage and provide appropriate insurance for the Browns' property in the future.

On appeal, the Browns argue the court applied an incorrect standard in ruling on the directed verdict motion in that they were not given the benefit of reasonable inferences from the evidence. They maintain further that the evidence demonstrates C & S assumed the responsibility for ensuring their insurance coverage was adequate by making the 1967 representations, paying the yearly insurance premiums, and adding earthquake coverage in 1980.

In reviewing an order granting a directed verdict, this Court must view the evidence and all reasonable inferences therefrom in the light most favorable to the party against whom the verdict was directed. A jury issue exists where the evidence is susceptible of more than one reasonable inference. *Botchie v. O'Dowd*, — S.C. —, —, 432 S.E. (2d) 458, 460 (1993).

■ Applying this standard to the evidence presented by the Browns, we agree with the trial court that C & S ' was entitled to a directed verdict because the record reveals no evidence of an expressed or implied undertaking by C & S to monitor the Browns' insurance coverage and ensure flood insurance coverage.

The parties expressly agreed the mortgagor would maintain insurance on the property. Moreover, pursuant to a provision in the mortgage, C & S in fact maintained the insurance through the payment of premiums from an escrow account managed by it. It is also undisputed that over the years the dollar amount of hazard insurance coverage increased and C & S paid any additional premium increases for the coverage; and C & S also procured an endorsement to the homeowner's policy adding earthquake coverage using the escrow funds.[5] The Browns claim these activities together with the 1967 statement made at their loan closing is sufficient evidence of the assumption of a duty by C & S to overcome a directed verdict motion citing the case of *Land Mortg. Inv. & Agency Co. of America v. Gillam,* 49 S.C. 345, 26 S.E. 990, *reh'g denied,* 49 S.C. 345, 29 S.E. 203 (1897) (Supreme Court affirmed verdict against mortgagee Bank which had retained $25 of the mortgage loan to procure insurance, but then failed to do so, resulting in a $750 loss to the mortgagor when a fire destroyed her house).

The Browns attribute great significance to the 1967 statement because they claim it imparted to them that C & S was promising to take care of their insurance needs in the future. They further argue that C & S demonstrated it had lived up to that commitment by adding earthquake insurance in 1980 and by increasing the dollar amount of the hazard insurance coverage, all of which they relied on.

---

[5]The Mortgage Agreement states the mortgagor is required to insure the mortgaged premises for the mortgagee's benefit. Additionally, the Browns' homeowners policy contained "Inflation Protection" which provides for automatic annual coverage increases to reflect increases in construction and other home replacement costs. The record reflects this coverage was added in 1980, but does not show who added the coverage. Thus, the only reasonable inference to be drawn from this evidence is that C & S obtained the earthquake insurance to protect its own insurable interest in the mortgaged property, and the increases in the dollar amount of the coverage were largely the product of the policy inflation clause.

The 1967 statements are insufficient to establish the assumption of a duty to procure flood insurance in the future. The 1967 statement is simply an expression of the status of coverage at the time and not a representation that the bank assumed responsibility for the adequacy of future coverage. Additionally, the maintenance of the escrow account by C & S and the payment of the insurance premiums therefrom pursuant to the agreement of the parties did not impose a duty on C & S to monitor the Browns' insurance coverage and adjust it according to the Browns' needs. *See Beckford v. Empire Mut. Ins. Group*, 135 A.D. (2d) 228, 525 N.Y.S. (2d) 260 (1988) (maintenance of an escrow account imposed no duty on Mortgagee to keep premises insured).[6]

As relates to the addition of earthquake coverage in 1980, the record does not reflect the amount of this coverage. The trial court held that because the mortgage documents permitted C & S to secure necessary insurance coverage to protect its interest in the property, the only reasonable inference to be drawn from the evidence is that it was protecting its interests in 1980. While the Browns now argue that they are entitled to the inference that the earthquake coverage exceeded C & S's interest in the property, we note that at trial when the court asked their counsel whether there was evidence of the value of the property versus the amount owed C & S in 1980, he replied that "there was [no] testimony as to that." Contrary to the Browns' argument, a review of the policy itself provides no basis for making that determination. We, therefore, agree with the trial judge that the only reasonable inference is that the bank sought to protect itself by adding the coverage. Moreover, and importantly, the Browns can claim no reliance on this action because Mrs. Brown testified she did not know the earthquake coverage had been added until after the damage occurred in 1989.

C & S, as mortgagee, was not in a fiduciary capacity with the Browns and, thus, did not have a heightened duty of care in its dealings with them. *See Burwell v. South Carolina Nat'l Bank*, 288 S.C. 34, 40, 340 S.E. (2d) 786, 790 (1986) (absent special circumstances, relationship between

---

[6]We note that Veterans Administration Regulations apparently required the establishment of the escrow account and the payment of the insurance premium therefrom.

mortgagee and mortgagor is that of debtor/creditor, with no fiduciary obligations imposed on mortgagee). C & S's conduct in maintaining the Browns' homeowners policy should not be extended into a duty to anticipate all of the Browns' insurance needs and take action to accommodate those needs. *Cf. South Carolina State Ports Authority v. Booz-Allen & Hamilton, Inc.*, 289 S.C. 373, 346 S.E. (2d) 324 (1986) (legal duty is that which the law requires to be done or forborne with respect to a particular individual; negligence claim fails if there is no duty). Finally, the Browns admit that after 1967, they never talked to C & S about policy coverage and always relied on the insurance servicing agency to answer their insurance questions.

The remaining arguments advanced by the Browns are manifestly without merit and we dispose of them pursuant to Rule 220(b)(2) SCACR; § 14-8-250 S.C. Code Ann. 1976 and *Voelker v. Hillcock*, 288 S.C. 622, 344 S.E. (2d) 177 (Ct. App. 1986).

Accordingly, the trial court order directing a verdict in favor of C & S is hereby

Affirmed.

HOWELL, C.J., and SHAW, J., concur.